JOE ENNES, APPELLANT, v. TULIO MORI, RESPONDENT.

No. 4696

April 28, 1964                    391 P.2d 737

---

*Brian L. Hall,* of Reno, for Appellant.

*Diehl & Recanzone,* of Fallon, for Respondent.

# OPINION

By the Court, BADT, C. J.:

The only error assigned in this appeal is that the denial by the trial judge of defendant's motion for leave to amend his answer was an abuse of discretion.

The action was brought by Mori against his partner Ennes who had entered into a partnership agreement for the ownership and conduct of the business known as "Club Horseshoe" in Fallon, Nevada, a licensed bar and gaming establishment. The complaint alleged the purchase by Ennes of a half interest in the business from Mori, the execution of a promissory note by Ennes to Mori, and a chattel mortgage on Ennes' half interest in the equipment and stock in trade to secure such note, the default of Ennes thereunder, the further default of Ennes in his agreement to discharge half of an existing indebtedness from Mori to one Austin, and general breach and repudiation of the partnership agreement by Ennes. The partnership agreement provided that each of the partners devote all of his working time to the business.

The answer contained sundry admissions and denials,

and alleged as affirmative defenses that plaintiff had breached the articles of co-partnership in that he did not actively participate in or devote his entire time to said business. He joined in plaintiff's prayer that the partnership should be dissolved and an accounting be made. He also sought damages from the plaintiff by reason of plaintiff's alleged breach of the agreement.

The complaint was filed and summons issued November 19, 1962, and personal service made within the county on the following day. On March 27, 1963, motion and notice of motion for default were filed. On April 10, 1963, without objection, the answer was filed.

On December 14, 1962, a stipulation was entered into whereunder (1) defendant entered his appearance, (2) the parties dissolved the partnership as of that date, (3) the business was to continue with Mori as the sole proprietor, (4) an accounting was to be made forthwith at the equal cost of the parties, (5) assets were to be equally divided after satisfaction of the partnership debts.

The trial date was originally set for July 1, 1963, but appellant obtained a continuance to August 12, 1963. The morning of that date was spent in a pre-trial conference[1] at which the documentary evidence was stipulated into the record, as well as the amount of money due to plaintiff on the promissory note and the amount due and owing by the parties to the prior owner of the business (both subject to any defense or setoff of the defendant), the amount of the partnership obligations, and the amount thereof paid by each of the parties and the balance due on said obligations, as well as the value of the partnership assets. At such pre-trial hearing it does not appear that any order was sought as to the pleadings or the issues, and the same remained as set forth in the complaint, answer, stipulation, and pre-trial order regarding the sums involved. When the case was called for trial in the afternoon, plaintiff rested on the prima facie showing made at the pre-trial conference. Defendant stated that he did not desire to make an opening

---

[1]The attendance at such pre-trial conference was appeal counsel's first connection with the case.

statement and called the plaintiff as an adverse witness.

Defendant's counsel propounded the following question to the plaintiff: "When you had your talks and conversations with Joe Ennes, prior to signing this agreement, the partnership agreement I am referring to, did you make any statements to Joe Ennes as to in your opinion how much money the business was capable of making in the future, or how much money the business made in the past?" Plaintiff objected on the ground that fraud or fraudulent representations had not been pleaded as a defense, and that under NRCP 8(c) fraud must be specially pleaded, that under NRCP 9(b) the circumstances constituting the fraud must be stated with particularity, and that under NRCP 12(h) if not so pleaded, is waived.

Appellant conceded that the objection was well taken, but asked leave to amend the answer so as to plead fraud and fraudulent representations as an affirmative defense, saying (as he says in this appeal) "that it is completely within the court's discretion as to whether to allow in this instance the defendant to amend his [answer] or not," but contended, as he contends here, that there is no showing that the plaintiff will be prejudiced by allowing the amendment.

The trial court then called on counsel for defendant "to make a specific offer of proof as to what you feel you can adduce if the court permitted you to go forward." The answer was: "It was represented to the defendant in this case that the business was a profitable business, that for at least two prior years it had made money; that for the years subsequent to the entering into the agreement it was represented to Mr. Ennes that each of the partners would receive at least Ten to Twelve Thousand Dollars apiece per year. And based upon the representations, which we can establish were not true, that the business would have been a profitable business in the past, which it was not, and that it would make money in the future, which it did not. This was either fraud or a gross misrepresentation on the part of the plaintiff to induce the defendant to sign this particular agreement."

The court then elicited the following admissions from defendant's counsel: that defendant has had considerable time to plead these matters, in fact nearly six months and that there are no intervening motions to modify or amend defendant's pleading up to the present time. The objection to the motion to amend was sustained and the witness was excused.

Appellant contends most strenuously that such ruling was an abuse of the court's discretion, in that at no time did the respondent show or claim that he would be prejudiced by allowing the amendment.

In support of this he cites 3 Moore, Federal Practice, 804, 805 (2d ed.), for its discussion of Rule 15 to the end that such rule, together with others, looks to the disposition of cases on their merits, facilitates amendments, and recognizes that at the trial stage, pleadings should not be over-emphasized. The noted author then refers to the fact that Rule 15, in conjunction with Rule 16 deals with pre-trial procedure and the formulation of issues and makes it possible for the court to have the pleadings amended so that the real, disputed issues are clearly formulated.[2] Appellant relies most heavily, however, on the text writer's conclusion that "if objection is made to the trial of an issue not raised by the pleadings, an amendment is to be allowed to raise the issue, *unless the objecting party* can show (emphasis supplied) that he would be *actually prejudiced* * * *." Further discussing Rule 15(b) the author says: "Normally a court should, in such a situation, permit the amendment and grant a continuance where the person seeking the amendment has been, and is, acting in good faith, since the court can assess costs against the party at fault." Id. 849.

Appellant further cites 1A Barron & Holtzoff, Federal Practice & Procedure, Rules Ed. § 442, at 710, where the authors say: "Indeed it is perhaps no exaggeration to say that the only reason for not allowing an amendment to a pleading is prejudice to the opposing party." But the

---

[2]In the pre-trial conference, appellant made no statement or suggestion of adding the defense of fraud.

authors say further that "in determining the question of prejudice, the timeliness of the amendment is an important factor." Id. 744.

Thus we see that the rather extreme statements that a motion to amend during the trial should be allowed in order to raise the new issue unless the objecting party can show that he will be actually prejudiced and that the only reason for not allowing an amendment is prejudice to the opposing party, are somewhat modified if it appears that the amendment is not sought in good faith, or is untimely.

Cases in point supporting the extreme rule stated, which apparently throws the entire burden upon the opposing party to show prejudice in order to defeat the amendment, and however much the party seeking the amendment has been dilatory or otherwise at fault, are hard to come by. This is evidenced by the following statement in appellant's opening brief:

"In reviewing the authorities upon the issue raised in this case it is virtually impossible to find any case in point and the cases cited are not too much help since all of them hold that it is a matter of discretion with the lower court, which discretion will not be reversed unless it is abused, each court looking at each individual case and the facts therein to make a determination; however, in most all of the cases reviewed, the court based its decision upon what, if any, prejudice would be occasioned to the other party if the court allowed the amendment."

Directly in point, however, is the case of Schick v. Finch (D.C.S.D.N.Y.), 8 F.R.D. 639, in which the factual situation corresponds rather closely to that in the instant case. The defendant, having interposed a special defense in his answer, sought leave to add an additional special defense at the trial. The court noted that there was no disclosure of how long ago these facts had been ascertained nor whether reasonable diligence would not have revealed them sooner; that the original parties to the transaction are the parties to the litigation; that if defendant's refusal to pay the note was founded on plaintiff's misrepresentation, he undoubtedly knew

wherein he believed the plaintiff to have mis-stated facts. "Surely," said the court, "he must have articulated them in his mind by the time he served his answer in July, 1943." The court goes on to say that the liberal policy provided in Rule 15(a) "does not mean the absence of all restraint. Were that the intention, leave of court would not be required. The requirement of judicial approval suggests that there are instances where leave should not be granted. The instant case, I believe, falls into such a category. It is made on the very eve of trial. It proposes to change allegations which go to the heart of the issue without assigning an adequate cause for the modification. It is concerned with matters, which, if true, must have been within the defendant's knowledge when the controversy arose." The Honorable Simon H. Rifkind, District Judge, denied the motion for leave to amend.

The case was cited with approval in Anderson v. National Producing Co., 2 Cir., 253 F.2d 834. There defendant sought to amend to assert an additional defense in a negligence action in order to set up § 203 of the Pennsylvania Workmen's Compensation Act. The United States Court of Appeals for the Second Circuit noted that the motion to amend had not been made until the trial had proceeded; that the pre-trial examinations had been taken and the plaintiff had closed her case on a theory of common-law negligence before the matter was brought up. The court held that the denial of leave to amend was a proper exercise of the trial court's discretion.

We prefer to follow the reasoning of these two cases. Otherwise we should be approving a rule under which, despite an entire lack of diligence on the part of the defendant, in spite of long-lasting neglect without excuse, in spite of a defendant's approval of the pleaded issues in a pre-trial conference, he is entitled to an amendment and may throw the entire burden of showing resulting prejudice upon the opposing party.

We prefer to follow the logic of Judge Rifkind's opinion as approved by the Court of Appeals for the Second Circuit, and to hold that there was no abuse of discretion

in the trial court's denial of appellant's motion for leave to amend his answer.

The judgment is affirmed with costs.

McNAMEE and THOMPSON, JJ., concur.