ADELAIDE BROWN AND PAT JOHNSON, HEIRS OF DECEDENT SOPHIE STOKMANS, APPELLANTS, *v.* DR. ALBERT CAPANNA, RESPONDENT.

No. 19047

November 27, 1989                          782 P.2d 1299

[Rehearing denied May 31, 1990]

*Marquis, Haney & Aurbach,* Las Vegas, for Appellants.

*Galatz, Earl, Catalano & Smith,* Las Vegas, for Respondent.

*Hamilton & Lynch,* Reno, for Amicus Curiae Nevada Trial Lawyers Association.

## OPINION

*Per Curiam:*

In this case of alleged medical negligence and lack of informed consent, the district court properly found that the negligence counts were barred by res judicata. However, the district court abused its discretion by excluding expert testimony that would have allowed appellants Adelaide Brown and Pat Johnson, the daughters of deceased Sophie Stokmans, to prove their prima

facie case of failure to acquire informed consent. Based on Brown and Johnson's inability to prove their prima facie case, the court directed a verdict for respondent Dr. Albert Capanna. We reverse and remand.

*Facts*

In 1985, 82-year-old Sophie Stokmans went to the emergency room at University Medical Center in Las Vegas to see Dr. Albert Capanna, a neurosurgeon, about facial pain known as "tic douloureux" which she had experienced for ten years. Stokmans had been treated previously with medication and with a glycerol injection. However, these treatments had been ineffective, and Stokmans sought further treatment and specifically wanted to know about surgical options.

Capanna briefly met with Stokmans and her daughter, Adelaide Brown, in the emergency room. He examined Stokmans' face and prescribed further medication. He also explained a procedure in which he would make a cut behind the ear and go in surgically to deaden the nerves. This procedure is known as a suboccipital craniectomy. Capanna also explained that Stokmans would be put to sleep, that she would be hospitalized for a few days, and that, if successful, the operation would alleviate the facial pain. Stokmans decided that the pain was intolerable and called Capanna to schedule surgery.

A few days later, Stokmans checked into the hospital in preparation for her surgery the next day. That evening Capanna again met with Stokmans and again discussed the procedure and, according to Capanna, discussed all alternative treatments, risks and complications. No one but Stokmans and Capanna were present at this examination and discussion on the eve of the surgery. Stokmans also signed a consent to surgery stating that she authorized Capanna to perform the craniectomy. The form stated that all risks had been explained to her; however, the form did not enumerate those risks.

Capanna performed the surgery the next day. After surgery, Stokmans developed hydrocephalus (pressure on the brain) for which Capanna performed a shunt procedure. After this procedure, Stokmans lapsed into a coma and died six weeks later.

Stokmans' daughters, Adelaide Brown and Pat Johnson, brought an action against Capanna for negligence and lack of informed consent. The negligence cause of action was dismissed on a partial summary judgment, and the court denied Brown and Johnson's motion to amend to reallege the negligence counts. The parties went to trial on the informed consent issue. At the conclusion of the evidence, the district court granted a directed verdict in favor of Capanna.

*Amendment of the Complaint*

Brown and Johnson contend that their motion to amend the complaint to allege new causes of action for negligence was improperly denied by the district court. This contention is without merit because the negligence allegations were finally adjudicated when the district court granted partial summary judgment and were thus barred by res judicata.

The original complaint sought damages for Capanna's alleged negligence in examining, treating, operating on, and caring for Stokmans from and after June 21, 1985, the day that Stokmans first saw Capanna concerning her facial pain. Capanna moved for summary judgment on these negligence allegations, and Brown and Johnson stipulated to their dismissal, leaving only the informed consent cause of action. Later, Brown and Johnson received more information through depositions of expert witnesses possibly indicating that Capanna had been negligent in his examination of and advice to Stokmans before the surgery. Based on this new information, Brown and Johnson sought leave to amend the complaint to include new negligence causes of action. The district court denied their motion.

NRCP 15(a) dictates that leave to amend a pleading "shall be freely given when justice so requires." However, the requirement that the amending party acquire leave of the court suggests that there are instances in which leave should not be granted. Ennes v. Mori, 80 Nev. 237, 243, 391 P.2d 737, 740 (1964).

Judgment on the merits of an issue bars further consideration of the issue based on the principles of res judicata. Jackson v. Hayakawa, 605 F.2d 1121, 1125 (1979), *cert. denied,* 445 U.S. 952 (1980). Here, Capanna moved for partial summary judgment stating that there was no evidence of medical malpractice, and Brown and Johnson did not oppose summary judgment on the issues of negligence. The court, therefore, granted the summary judgment on the counts that alleged that Capanna was negligent in his treatment and care.

At oral argument, counsel for Brown and Johnson argued that the summary judgment concerned negligence only in the surgery and the post-operative care rendered by Capanna and that the proposed amendment sought to add a negligence cause of action for Capanna's pre-operative care. This distinction, however, has no basis in the record. As stated above, one of the causes of. action that was adjudicated by the summary judgment alleged that Capanna had been negligent in his care of Stokmans from the first day that he met her. Thus, the issue of whether Capanna was

negligent in his pre-operative care and treatment of Stokmans was resolved on the merits when the court ordered partial summary judgment, and the district court properly denied the amendment which would have once again alleged negligence.

## Informed Consent

After all of the evidence had been heard in the jury trial on the issue of informed consent, Capanna moved the court for a directed verdict. The court granted Capanna's motion and directed a verdict against Brown and Johnson, thus leaving them with no recovery. Brown and Johnson contend that the district court should have allowed the issue to go to the jury.

A motion for a directed verdict may be made at the close of the evidence. NRCP 50(a). The court may grant the motion when there remains no issue of material fact for the jury to decide. *See* Levine v. Remolif, 80 Nev. 168, 390 P.2d 718 (1964). In determining whether a directed verdict should be granted, the court must view all of the evidence in the light most favorable to the nonmoving party. *See* Broussard v. Hill, 100 Nev. 325, 682 P.2d 1376 (1984).

We have indicated that Nevada follows the traditional rule that a plaintiff must show lack of informed consent through expert medical testimony. Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983). In *Beattie,* we reasoned that, because the Nevada Legislature has enacted NRS 41A.100 requiring plaintiffs in medical malpractice cases to demonstrate negligence through expert testimony, a plaintiff claiming that a doctor failed to acquire informed consent must demonstrate by expert testimony that informed consent was not obtained. *Id.* at 584, 668 P.2d at 271.

Holding to the *Beattie* view, the question on appeal is whether Brown and Johnson presented sufficient evidence, including expert testimony, that Capanna did not conform to the customary disclosure practice of a physician in the relevant community or to what a reasonable physician would disclose.[1] The evidence of

---

[1]Brown and Johnson and amicus curiae Nevada Trial Lawyers Association suggest that we should adopt a different standard for proving lack of informed consent. They urge that we should abandon the standard in *Beattie* requiring the plaintiff to show by expert testimony that the physician did not conform to "the customary disclosure practice of physicians in the relevant 'community,' or what a reasonable physician would disclose under the circumstances." *Beattie, above,* 99 Nev. at 584, 668 P.2d at 271. Instead, Brown and Johnson and the amicus curiae urge that we should adopt a standard that focuses on the thoughts of the patient and requires the jury to determine what a reasonable person would have regarded as significant information upon which to base a decision concerning treatment. We decline the invitation to overrule *Beattie* and to change the standard for proving lack of informed consent.

exactly what Capanna told Stokmans about the surgery is disputed. Capanna spoke to Stokmans and Brown in the emergency room. According to Brown, Capanna explained that the procedure involved putting a cut in the back of the head behind the ear and going in to deaden the nerves. He also explained that Stokmans would be put under a general anesthesia, that she would be in the hospital for several days, and that the operation was being performed for pain caused by tic douloureux.[2] The only expert testimony at trial that this may have been insufficient to acquire informed consent came from Dr. Saul Frankel in the following exchange:

> A. [Dr. Frankel]  He performed a major craniotomy—opening the skull, it's technically called suboccipital craniectomy, which means he opened the back of the head, opened the skull, went in a considerable distance and approached this nerve to the face, the trigeminal nerve, and moved away a small artery which was pulsating, which was in contact with that nerve and which was causing pain. This is a major surgical procedure inside the skull, the base of the brain.
>
> Q.  Let me ask you this question, Dr. Frankel: Is it a sufficient description of this surgery to say that it is going to be a cut in the back of the head and that you will be asleep during the operation?
>
> A.  No.
>
> Q.  Is that a sufficient description?
>
> A.  I certainly don't think that covers it.

This is the only expert testimony from the trial concerning informed consent. Dr. Frankel apparently was not asked whether this conformed or failed to conform to what a reasonable physician would disclose. In addition, the hypothetical question to which Dr. Frankel responded did not include all that Capanna disclosed to Stokmans, even viewing the evidence in a light most favorable to Brown and Johnson. Without more, Dr. Frankel's testimony would be insufficient to prove that Capanna did not acquire Stokmans' informed consent.

Brown and Johnson contend that the court abused its discretion by excluding the deposition of another expert witness. In his deposition testimony, Dr. J. DeWitt Fox testified that under the

[2]As we stated above, Capanna claims that he discussed all of the alternative treatments, complications and risks associated with a suboccipital craniectomy on the eve of surgery. However, this is disputed and may not be used to support the directed verdict.

facts of this case Capanna failed to acquire Stokmans' informed consent. Viewing the evidence in Brown and Johnson's favor, Dr. Fox's proffered testimony would have established a prima facie case of lack of informed consent. Accordingly, if the court abused its discretion by excluding Dr. Fox's deposition testimony, the court prejudiced the outcome of the case.

The competency of an expert witness is a question for the sound discretion of the district court, and we will not disturb the ruling absent a clear abuse of discretion. Lockart v. Maclean, 77 Nev. 210, 361 P.2d 670 (1961) (overruled on other grounds by Orcutt v. Miller, 95 Nev. 408, 595 P.2d 1191 (1979)). Although Capanna agreed that Dr. Fox was unavailable, Capanna argued that Dr. Fox's deposition testimony should not be admitted because Dr. Fox is not qualified to testify on the subject of tic douloureux and because counsel failed to elicit Dr. Fox's testimony that his opinion was limited to those matters about which he could testify to a reasonable degree of medical probability.

Dr. Fox is a board certified neurosurgeon and has treated tic douloureux, although he apparently has not performed the type of surgery Capanna performed on Stokmans. Even though Dr. Fox may not have performed the same type of surgery, the district court abused its discretion when it excluded the testimony of this board certified neurosurgeon on issues involving informed consent prior to neurosurgery. Dr. Fox's testimony based on his expertise in his field certainly would have been helpful to the jury. It is not necessary for Dr. Fox to have performed the surgery to know what the alternative treatments, complications and risks of a suboccipital craniectomy are or to know what a reasonable physician or neurosurgeon would have told Stokmans about the procedure and its risks. *See* Frost v. Mayo Clinic, 304 F.Supp. 285, 288 (D.Minn. 1969). "While the trial court has considerable discretion in determining whether an individual may testify as an expert, a proposed expert should not be scrutinized by an overly narrow test of qualifications." People v. Whitfield, 388 N.W.2d 206, 209 (Mich. 1986) (citation omitted). The fact that Dr. Fox has not performed the specific procedure goes to the weight, not the admissibility, of the evidence.

In addition, Dr. Fox could not be expected to testify to a reasonable degree of medical probability concerning lack of informed consent. Normally, a medical expert is expected to testify only to matters that conform to the reasonable degree of

672

medical probability standard. *See* Orcutt v. Miller, 95 Nev. 408, 595 P.2d 1191 (1979). However, Dr. Fox was not being asked his expert opinion on the cause of Stokmans' death or on some other factor of causation. The relevant inquiry was whether Capanna did not conform to the customary disclosure practice in the relevant community or to what a reasonable physician would disclose. There are no medical probabilities involved in this inquiry. Therefore, to require that Dr. Fox's testimony be to a reasonable degree of medical probability was an abuse of the district court's discretion.

The district court abused its discretion when it excluded Dr. Fox's deposition testimony. Since that testimony would have helped Brown and Johnson prove their prima facie case of lack of informed consent, we cannot say that the abuse of discretion did not affect Brown and Johnson's substantial rights. NRS 47.040 (error may not be predicated on exclusion of evidence unless substantial right of party affected). Accordingly, we must reverse and remand for a new trial.[3]

_____

[3]We have carefully considered the parties' other contentions and find that they are without merit.