10 F.3d 808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re GPA, INC., d/b/a General Practice Associates.
GPA, INC., d/b/a General Practice Associates, Appellant,
v.
HUMANA, INC., a Delaware corporation; AMERICAN MEDICORP
DEVELOPMENT COMPANY, a Delaware corporation, Appellees,
 No. 92-16171.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1993.
Decided Nov. 12, 1993.
 
 Before: BOOCHEVER, THOMPSON, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 General Practice Associates, Inc. ("GPA"), appeals the reversal of the judgment of the United States Bankruptcy Court by the United States District Court for the District of Nevada, sitting as a bankruptcy court of appeals. The district court held (1) that collateral estoppel and principles of full faith and credit barred the bankruptcy court from setting aside the execution sale and dismissal of GPA's legal claims; (2) that collateral estoppel rendered unnecessary a determination of the reasonably equivalent value of the claims; (3) that the bankruptcy court exceeded its authority in setting aside the state court dismissal as a voidable preference; and (4) that the bankruptcy court clearly erred in holding that the evidence established that appellee Humana, Inc. ("Humana") "directed" appellee American Medicorp Development Company ("AMDECO").
 
 
 3
 Because we hold that collateral estoppel and principles of full faith and credit barred the bankruptcy court from setting aside the execution sale and dismissal of GPA's claims, we affirm without reaching the issue of Humana's direction of AMDECO.
 
 STANDARD OF REVIEW
 
 4
 We review the district court's decision on appeal from a bankruptcy court de novo, In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir.1990), applying the same standard of review as did the district court. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). The bankruptcy court's conclusions of law are reviewed de novo. In re Lockard, 884 F.2d 1171, 1174 (9th Cir.1989). Findings of fact are reviewed for clear error. In re Dewalt, 961 F.2d 848, 850 (9th Cir.1992).
 
 DISCUSSION
 
 5
 I. Collateral Estoppel and Full Faith and Credit
 
 
 6
 GPA first argues that collateral estoppel did not bar the bankruptcy court from finding that the sheriff's sale and the dismissal of its claims were fraudulent transfers.
 
 
 7
 This court accords the same collateral estoppel effect to a state court judgment as would the courts of that state. Lockard, 884 F.2d at 1174 (full faith and credit principles require federal courts to give state judicial proceedings the same effect as they have in the courts of that state). Under Nevada law, relitigation of an issue is prohibited if a party or privy (1) actually litigated the identical issue in another court of competent jurisdiction, and the issue was (2) actually litigated, and (3) necessarily decided in the prior proceeding. State v. Kallio, 557 P.2d 705, 707 (Nev.1976) (per curiam); Brown v. Capanna, 782 P.2d 1299, 1301 (Nev.1989) (per curiam) ("Judgment on the merits of an issue bars further consideration of the issue"). Because we hold that the Nevada Supreme Court judgment meets these conditions, it has collateral estoppel effect in the federal courts.
 
 A. Identical Issue
 
 8
 GPA argues that there is no collateral estoppel because in the state court fraudulent transfer was litigated, if at all, under state law, while the bankruptcy court applied federal bankruptcy law. Thus, GPA claims that the issues were not the same in both courts.
 
 
 9
 The district court determined that the state and federal fraudulent transfer issues were identical for collateral estoppel purposes because of the common origin of the fraudulent transfer statutes and their similar language. We agree. Both the state and federal statutes are patterned after the Uniform Fraudulent Transfer Act. We reject GPA's argument that, although the state court found the transfer procedurally correct, it did not necessarily consider whether reasonably equivalent value was received. Under both the state and federal statutes, a fraudulent transfer occurs if a debtor received less than "reasonably equivalent value" in exchange for the transferred property. See Nev.Rev.Stat. Sec. 112.180(1)(b) (1991); 11 U.S.C. Sec. 548(a)(2)(A) (1988).
 
 
 10
 GPA argues that the state and federal standards for reasonably equivalent value are not identical; however, this circuit has held that " 'reasonable equivalence for the purposes of a foreclosure sale under Sec. 548(a)(2)(A) should be consonant with the state law of fraudulent conveyances.' " In re BFP, 974 F.2d 1144, 1148 (9th Cir.1992) (quoting In re Winshaw Settler's Trust, 758 F.2d 1136, 1139 (6th Cir.1985)), cert. granted, 113 S.Ct. 2411 (1993). The factual questions underlying the fraudulent transfer determination were identical for collateral estoppel purposes in the state and bankruptcy courts.
 
 B. Court of Competent Jurisdiction
 
 11
 GPA argues that the Nevada Supreme Court was not a court of competent jurisdiction to hear the issue of fraudulent transfer because "[i]n the Nevada appellate action, Debtor, acting as Debtor and not as Debtor-in-Possession, raised the issue [of fraudulent transfer and] therefore, no party with standing ... was before the Nevada Supreme Court." (Emphasis in original).
 
 
 12
 We reject this contention. GPA raises a question of standing in state court. State courts need not have the same standing requirements as federal courts. ASARCO, Inc. v. Kadish, 490 U.S. 605, 617 (1989). Standing in a state court action is, therefore, a state law question.
 
 
 13
 The issue of whether GPA had standing in the state court was fully litigated in the Nevada Supreme Court. In its supreme court brief, GPA identified itself as Debtor-in-Possession in its statement of jurisdiction. GPA attached the bankruptcy statements, schedules, and adversary complaint as its appendix to the supreme court brief. GPA also urged the Nevada Supreme Court to find a fraudulent transfer, "subject to avoidance by bona fide creditors of GPA," implying that it was such a creditor.
 
 
 14
 Further, in its Nevada Supreme Court Reply Brief, GPA defended its standing, stating:
 
 
 15
 G.P.A. and LINDE'S were "creditors" by virtue of their claims against Respondents as then set forth in their pending lawsuit. Furthermore, the Bankruptcy Court in [an earlier] bankruptcy implicitly recognized the status of G.P.A. and LINDE'S as bona fide "creditors", both before and after the Sheriff's Sales, in both its granting of the motion of G.P.A. and LINDE'S to be added to the Unsecured Creditors Committee on July 25, 1988, as well as its denial of HUMANA'S motion to remove G.P.A. and LINDE'S from said Committee on September 20, 1988.
 
 
 16
 Additionally, G.P.A., INC., currently as Debtor-in-Possession by virtue of Bankruptcy Case No. BK-S-89-2384-RCJ, has a duty to recover and marshal all of its assets for the benefit of its creditors, such that hindsight shows that G.P.A. was a "future creditor" within the ambit of N.R.S. 112.180.
 
 
 17
 ....
 
 
 18
 And finally, since the transfer sought to be avoided were [sic] not consensual, Appellants [GPA and Linde's] have standing to challenge them, especially in light of their current position as Debtor-in-Possession.
 
 
 19
 The Nevada Supreme Court decision made no specific determination whether GPA had standing. It did, however, move onto the substance of the arguments and decide the case on the merits. Therefore, the state court implicitly found that GPA had standing.
 
 
 20
 This court does not have the authority to overrule a state supreme court decision on the question of whether parties had standing under state law in a state court action. This court has stated that "[e]ven if a state court lacked jurisdiction, 'once the issue ha[s] been fully and fairly litigated in the [state] court, the [federal] court [is] bound by that court's adjudication, whether correct or not, and [is] obliged to accord full faith and credit to its resulting judgment.' " Turnbow v. Pacific Mut. Life Ins. Co., 934 F.2d 1100, 1103, (9th Cir.1991) (quoting SEC v. United Fin. Group, Inc. 576 F.2d 217, 221 (9th Cir.1978)) (emphasis and bracketed phrases in original).
 
 
 21
 The Nevada Supreme Court determination that GPA had standing is sufficient for collateral estoppel purposes in this court.
 
 C. Actually Litigated
 
 22
 GPA next argues that the issue of fraudulent transfer was not properly before the Nevada Supreme Court because it was not raised in the state trial court, and thus it was not actually litigated. Nevada law normally requires that an issue should not be heard on appeal if it was not raised in the trial court. State v. Wade, 772 P.2d 1291, 1293 n. 3 (Nev.1989) (per curiam). If the state supreme court decided the issue, however, this court does not have the authority to tell it that it should not have done so. We do not review the state law decisions of the Nevada Supreme Court. See Turnbow, 934 F.2d at 1103 (federal courts "may not serve as appellate tribunals to review errors allegedly committed by state courts"). The only exception to this rule appears to be "when the state proceedings are considered a legal nullity and thus void ab initio." In re James, 940 F.2d 46, 52 (3d Cir.1991), (citing Kalb v. Feuerstein, 308 U.S. 433, 438-40 (1940)).
 
 
 23
 The question of fraudulent transfer was raised by GPA to the Nevada Supreme Court: it was argued in the briefs and presumably at oral argument. Regardless of whether that court properly heard the issue, the issue of fraudulent transfer was actually litigated in the Nevada Supreme Court for collateral estoppel purposes.
 
 D. Necessary to the Determination
 
 24
 Finally, GPA argues that collateral estoppel does not apply because a determination of the fraudulent transfer issue was not "necessary" to the supreme court decision.
 
 
 25
 For collateral estoppel to apply, a decision on the merits of the issue must have been "necessary" to the first judgment, in the sense that, without a decision on the issue, the court could not have rendered a judgment. Segal v. American Tele. & Tele. Co., 606 F.2d 842, 845 (9th Cir.1979) (per curiam); Restatement (Second) of Judgments Sec. 27 cmt. j (1980).
 
 
 26
 Here, the Nevada Supreme Court order did not specifically address GPA's fraudulent transfer claim. It held, however, that AMDECO had purchased "all right, title, and interest" in the disputed causes of action, "[p]ursuant to the writs of execution." It also stated that GPA retained no interest in the actions, and as such, that the dismissal of the claims was proper. The appeal was then dismissed; any of GPA's remaining contentions were found to be "lacking merit."
 
 
 27
 The district court found that the Nevada Supreme Court must have held impliedly that there was no fraudulent conveyance because, "if the Court had determined there to be such a violation, AMDECO's purchase would not have been valid." Accordingly, "[n]o transfer of right would have taken place if the conveyance had been found to be fraudulent." We agree with this assessment. Because the Supreme Court found that there had been a valid transfer of all "right, title, and interest," and that GPA retained no "interest," it must necessarily have decided that there was no fraudulent transfer. Otherwise, GPA would have retained some interest in the claims.
 
 
 28
 Furthermore, the state court's determination that all of GPA's other contentions were "lacking merit" should not be disregarded. Even if a decision on the merits could not be implied from the court's discussion, it can be implied from this language. A judgment that claims are "without merit" can be sufficient to raise issue preclusion "if the outcome of the case--denial of all relief ...--necessarily constituted a rejection of the claims." American Iron and Steel Inst. v. EPA, 886 F.2d 390, 397 (D.C.Cir.1989), cert. denied, 497 U.S. 1003 (1990). See also Springfield Television Corp. v. FCC, 609 F.2d 1014, 1018-19 (1st Cir.1979).
 
 
 29
 The Nevada Supreme Court did not state that it was rejecting GPA's claims on procedural grounds, rather it rejected them as being without merit. We must give the appropriate meaning to this language. The Nevada Supreme Court could not have decided that GPA's fraudulent transfer claim was without merit without considering the substance of the issue.
 
 
 30
 Accordingly, we hold that the issue of a fraudulent transfer, including whether reasonably equivalent value was received, was actually litigated and necessarily decided before a court of competent jurisdiction, the Nevada Supreme Court. Nevada courts would give collateral estoppel effect to such a judgment, so federal courts must do likewise. The bankruptcy court was therefore collaterally estopped from deciding that question again.
 
 
 31
 For the same reasons, we affirm the district court holding that the bankruptcy court owed full faith and credit to the state court judgment, and erred by its failure to defer to it.
 
 II. Reasonably Equivalent Value
 
 32
 Because of our decision that collateral estoppel applies, we need not reach the question whether the bankruptcy court correctly refused to presume conclusively that GPA received reasonably equivalent value in exchange for its claims at the execution sale. But see In re BFP, 974 F.2d 1144, 1148 (9th Cir.1992), cert. granted, 113 S.Ct. 2411 (1993).
 
 III. Voidable Preference
 
 33
 GPA claims that the Nevada Supreme Court dismissal of its causes of action was a voidable preference under 11 U.S.C. Sec. 547(b) (1988). A voidable preference is a purely federal concept which accordingly was not raised in the state court. Thus, GPA was not collaterally estopped from raising this issue in the bankruptcy court.
 
 
 34
 In order for Sec. 547(b) to apply, a debtor must have had an "interest" in property that was transferred to a creditor no more than ninety days prior to the bankruptcy filing.
 
 
 35
 GPA asserts that it had an interest in the causes of action at the time of their dismissal, approximately fifty days before the August 4, 1989 bankruptcy filing. At oral argument, however, GPA conceded that it would have retained an interest in its claims only if the transfers pursuant to the writs of execution and sheriff's sale were fraudulent.[1] If the transfers were fully valid, then GPA had no interest in the claims during the requisite period prior to bankruptcy filing, and Sec. 547(b) does not apply to the dismissal.
 
 
 36
 Because we hold that the bankruptcy court was required to accord full faith and credit to the state court judgment, and was collaterally estopped from finding a fraudulent transfer, we affirm the district court's holding that the bankruptcy court exceeded its authority in holding that the state court dismissal was a voidable preference.
 
 IV. Finding of Fact No. 24
 
 37
 The bankruptcy court found that Humana directed AMDECO. As far as we can ascertain, this finding only becomes significant for the purpose of holding Humana liable in the event of a judgment against AMDECO. Because of our disposition of the collateral estoppel and full faith and credit issues, we do not believe that it is necessary to address whether the bankruptcy court clearly erred in making its finding of fact No. 24.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The writs of execution and sheriff's sale occurred outside the ninety day period prior to bankruptcy filing and are therefore not subject to Sec. 547(b)