**134 Nev., Advance Opinion 63**
IN THE SUPREME COURT OF THE STATE OF NEVADA

DONOVINE MICHAEL MATHEWS,
A/K/A DONOVIAN MATHEWS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72701

**FILED**

AUG 23 2018



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of child abuse, neglect or endangerment with substantial harm. Eighth Judicial District Court, Clark County; Michelle Leavitt, Judge.

*Reversed and remanded.*

Philip J. Kohn, Public Defender, and Kristy S. Holiday, Deborah L. Westbrook, and Howard Brooks, Deputy Public Defenders, Clark County, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Michelle Y. Jobe and Charles W. Thoman, Deputy District Attorneys, Clark County,
for Respondent.

BEFORE PICKERING, GIBBONS and HARDESTY, JJ.

18-32854

*OPINION*[1]

By the Court, HARDESTY, J.:

Appellant Donovine Mathews' conviction stems from an incident involving his girlfriend's two-year-old son, C.J., who incurred burns on his hands while Mathews was babysitting him and his sibling. From the time of the incident, Mathews has maintained that the burns happened accidentally, while the State has argued that Mathews intentionally burned C.J. We are asked to determine whether the district court abused its discretion in excluding Mathews' expert witness and in rejecting his proffered jury instruction. To answer these questions, we must determine, as an issue of first impression, how to assess the "assistance requirement" in *Hallmark v. Eldridge*, 124 Nev. 492, 189 P.3d 646 (2008), in the context of the burden of proof and the purpose for which the expert witness's testimony is being offered. Because the State bears the burden of proof in a criminal case, the district court improperly excluded Mathews' proffered expert witness and improperly refused his jury instruction. Thus, we conclude that Mathews was denied a fair trial because these errors were not harmless.

## FACTS AND PROCEDURAL HISTORY

On the morning of January 5, 2016, Mathews babysat his girlfriend Jasmin's two children, C.J. and J.J., at Jasmin's apartment while she went to a meeting at her apartment complex. Mathews' account of the incident as told to detectives is that while he was babysitting, he boiled

---

[1]We originally reversed and remanded in an unpublished order. Appellant has moved to publish the order as an opinion. We grant the motion and publish this opinion in place of our earlier order. *See* NRAP 36(f).

 

water on the stove and poured it into a mug to make instant coffee. After putting the water in the mug, he set it on the counter and went to change J.J.'s diaper. When he returned to the kitchen, C.J. was screaming, the backs of his hands were burned, and the mug was on the floor. Mathews maintains that C.J. accidentally spilled the water in the mug and burned himself, while the State contends that Mathews intentionally burned C.J.

During trial, the State presented testimony from three expert witnesses, all of whom opined that Mathews intentionally burned C.J. Mathews attempted to have Dr. Lindsay "Dutch" Johnson, a biomechanics expert, testify to rebut the State's theory and to testify about the mechanism of C.J.'s injuries. The State filed a motion in limine to strike or limit Dr. Johnson's testimony, which the district court granted following an evidentiary hearing. Mathews appeals his conviction, arguing that he was denied a fair trial because the district court abused its discretion in excluding his expert witness and in rejecting his proffered jury instruction on his theory of the case. We agree.

## DISCUSSION

*The district court abused its discretion in excluding Dr. Johnson*

At the evidentiary hearing, the district court asked Dr. Johnson questions about his experience with burn injuries but cut short his testimony, and eventually excluded him from testifying at trial. The district court concluded that Dr. Johnson was not qualified to testify about burns on a child's skin, and further, his testimony did not have an adequate factual foundation because nobody could testify to his theory of how C.J.'s injuries occurred. Mathews repeatedly requested that Dr. Johnson be able to testify to rebut the State's expert witnesses, but the district court refused each request.

 

On appeal, Mathews argues that the district court abused its discretion in excluding Dr. Johnson because he was qualified to testify as an expert in biomechanics and his testimony would assist the jury in assessing the mechanism of C.J.'s injuries. The State argues that this court has determined that Nevada law does not recognize biomechanics as a field of expertise, and regardless, Dr. Johnson was not qualified to testify as an expert regarding burn injuries on a child's skin.

"Whether expert testimony will be admitted, as well as whether a witness is qualified to be an expert, is within the district court's discretion, and this court will not disturb that decision absent a clear abuse of discretion." *Mulder v. State*, 116 Nev. 1, 12-13, 992 P.2d 845, 852 (2000). An expert witness must satisfy three requirements before being permitted to testify as an expert under NRS 50.275: "(1) he or she must be qualified in an area of scientific, technical or other specialized knowledge (the qualification requirement); (2) his or her specialized knowledge must assist the trier of fact to understand the evidence or to determine a fact in issue (the assistance requirement); and (3) his or her testimony must be limited to matters within the scope of [his or her specialized] knowledge (the limited scope requirement)." *Hallmark v. Eldridge*, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008) (alteration in original) (internal quotation marks omitted).

In assessing the "qualification requirement," the district court stated, "I really don't believe your expert can testify about burn patterns on a child's skin. . . . I don't think that taking an anatomy class and . . . his first aid training in the Marines allows him to testify about the different burn patterns on a child's skin . . . ." It does not appear from the record before us that the district court considered Dr. Johnson's academic degrees, licensure, and other experience, which he not only testified to but evidence of which



was also included in Mathews' supplemental briefing and offer of proof. *See id.* at 499, 189 P.3d at 650-51 (stating that to determine whether an expert meets the "qualification requirement," the district court should consider, among other things, the witness's "(1) formal schooling and academic degrees, (2) licensure, (3) employment experience, and (4) practical experience and specialized training." (footnotes omitted)). Rather, the district court made conclusory findings about Dr. Johnson's medical qualifications without considering whether Dr. Johnson was qualified to testify about the mechanism of C.J.'s injuries. Thus, the district court abused its discretion by failing to apply the *Hallmark* factors for the "qualification requirement" before disqualifying Dr. Johnson as an expert witness.

The district court also improperly analyzed the "assistance requirement." *See id.* at 500, 189 P.3d at 651 (stating that the district court must determine whether the expert's testimony will assist the trier of fact, and explaining that the testimony will assist the trier of fact "only when it is relevant and the product of reliable methodology" (footnote omitted)). Mathews argued to the district court that Dr. Johnson's testimony would assist the trier of fact because his testimony offered an alternate mechanism of C.J.'s injuries, which directly refuted the State's theory. The State argued that Dr. Johnson's testimony was based on assumption and not grounded in the facts of the case. The district court repeatedly stated that Dr. Johnson was making up scenarios that were not supported by the facts of the case.

The "assistance requirement" must be assessed in the context of what the burden of proof is and who bears that burden. In a criminal case, such as here, the State has the burden to prove the elements of a crime

 

beyond a reasonable doubt. *See Burnside v. State*, 131 Nev. 371, 385, 352 P.3d 627, 638 (2015). Thus, the State had the burden to prove that Mathews intentionally burned C.J. beyond a reasonable doubt. It is clear from the transcript of the evidentiary hearing that the district court failed to consider the purpose for which Mathews was offering Dr. Johnson's testimony, which was to rebut the State's theory that Mathews intentionally burned C.J. *See Leavitt v. Siems*, 130 Nev. 503, 510, 330 P.3d 1, 6 (2014) (explaining that rebuttal testimony "contradict[s] the [opposing party]'s expert or furnish[es] reasonable alternative causes to that offered by the [opposing party]" (internal quotation marks omitted)). Indeed, the State presented testimony from three experts, all of whom opined that Mathews intentionally burned C.J., including one expert who stated it was "as next to impossible as it comes" that C.J.'s injuries were accidental. Dr. Johnson was prepared to testify that it was not impossible and to explain how the child could have tipped the cup and spilled the scalding water on his hands accidentally.

In concluding that Dr. Johnson's testimony lacked an adequate factual foundation, the district court presumed that the State's experts were correct and consequently placed the burden on Mathews to prove beyond a reasonable doubt that C.J.'s burns occurred accidentally. But this was not Mathews' burden of proof to bear. *See Jorgensen v. State*, 100 Nev. 541, 544, 688 P.2d 308, 310 (1984) (explaining that "when a defense negates an element of the offense, the state must disprove the defense because of the prosecution's burden to prove all elements of the charged offense beyond a reasonable doubt").

In this case, Dr. Johnson's testimony would assist the trier of fact by demonstrating that an accidental mode of injury was possible. Notably, Dr. Johnson was not testifying to medical causation; rather, the

focus of Dr. Johnson's testimony would have been on the mechanics of C.J.'s injury, which was within his scope of expertise and directly refuted the State's theory. Accordingly, we conclude that the district court abused its discretion by failing to assess the purpose of Dr. Johnson's testimony in the context of the burden of proof when analyzing the "assistance requirement."

Finally, according to the State's argument on appeal, we previously determined that biomechanics is not a recognized field of expertise in Nevada, suggesting that biomechanical experts are not permitted to testify. However, the State misapprehends our holdings in *Hallmark* and *Rish v. Simao*, 132 Nev. 189, 195-96, 368 P.3d 1203, 1208 (2016).

In *Hallmark*, we concluded that while the expert witness met the "qualification requirement," he did not satisfy the "assistance requirement" because there was no evidence presented to show that biomechanics was a recognized field of expertise, or that the expert's methodology was reliable, had been tested, or was published or subject to peer review. 124 Nev. at 499-502, 189 P.3d at 651-52. Additionally, we concluded that the expert's opinion was highly speculative because he admitted that he formed it without knowing several pertinent facts of the case. *Id.* at 501-02, 189 P.3d at 652-53. In *Rish*, we clarified that "*Hallmark* stands for the well-established proposition that expert testimony, biomechanical or otherwise, must have a sufficient foundation before it may be admitted into evidence." 132 Nev. at 196, 368 P.3d at 1208.

Thus, biomechanical experts are not precluded from testifying altogether, and weaknesses in a purported expert's testimony, including that one expert may have lesser qualifications than the opposing party's expert witness, "goes to the weight, not the admissibility, of the evidence."

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*Brown v. Capanna*, 105 Nev. 665, 671, 782 P.2d 1299, 1303-04 (1989); *see also Mulder*, 116 Nev. at 13, 992 P.2d at 852 ("It is a function of the jury, not the court, to determine the weight and credibility to give [expert] testimony."); *Leavitt*, 130 Nev. at 510, 330 P.3d at 6 (concluding that in the context of a challenge to expert testimony as speculative, "even if portions of [an expert's] testimony [are] speculative, it [i]s for the jury to assess the weight to be assigned to [the] testimony").

We conclude that the district court abused its discretion by improperly applying the *Hallmark* factors in disqualifying Dr. Johnson as an expert witness under NRS 50.275 and thus not permitting him to testify. Having so concluded, we must now determine whether the error was harmless. *See Lobato v. State*, 120 Nev. 512, 521, 96 P.3d 765, 772 (2004) (stating that "any error that does not affect a defendant's substantial rights shall be disregarded"); *see also* NRS 178.598. We conclude that it was not harmless, as "[t]he exclusion of a witness' testimony is prejudicial if there is a reasonable probability that the witness' testimony would have affected the outcome of the trial." *Lobato*, 120 Nev. at 521, 96 P.3d at 772 (internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks omitted). Accordingly, we conclude that reversal is warranted.

*The district court abused its discretion in rejecting Mathews' proffered jury instruction*

Although we need not address Mathews' argument regarding his proffered jury instruction, we do so to avoid repetition on retrial. Mathews requested the following jury instruction:

> A person who committed an act or made the omission charged, through misfortune or accident, when it appears that there was no evil design,

SUPREME COURT
OF
NEVADA



(O) 1947A

intention or culpable negligence, must be found not guilty of the charge.

In the district court, Mathews argued that this instruction should be given because the facts in evidence could show C.J.'s injuries happened accidentally. The State argued that Mathew's theory was that he did not do any act, not that he did an act accidentally. The district court refused Mathews' proffered jury instruction without explanation.

"The district court has broad discretion to settle jury instructions and decide evidentiary issues," thus, this court reviews the decision to give or not give a specific jury instruction for abuse of discretion. *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). "This court has consistently held that the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005) (internal quotation marks omitted). "This court evaluates appellate claims concerning jury instructions using a harmless error standard of review." *Barnier v. State*, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003). If "a defendant has contested the omitted element [of a criminal offense] and there is sufficient evidence to support a contrary finding, the error [in the instruction] is not harmless." *Id.* at 132-33, 67 P.3d at 322 (alterations in original) (internal quotation marks omitted). However, the defense is not entitled to an instruction that misstates the law. *Ducksworth v. State*, 113 Nev. 780, 792, 942 P.2d 157, 165 (1997).

If not for the district court's error in excluding Dr. Johnson's expert witness testimony, there may have been evidence presented that would have warranted Mathews' proffered jury instruction. Further, the instruction was based on Mathews' theory of the case and correctly stated the law. *See McCraney v. State*, 110 Nev. 250, 254-55, 871 P.2d 922, 925

SUPREME COURT
OF
NEVADA

(O) 1947A

9

(1994) (approving a jury instruction that stated: "All persons are liable to punishment except those persons who committed the act through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence."). Had Dr. Johnson been permitted to testify, it is reasonably probable that the jury could have found that the "act" Mathews committed, and which resulted in C.J.'s injuries, was accidentally leaving a mug of hot water on the counter within C.J.'s reach. Therefore, we conclude that the district court abused its discretion in rejecting Mathews' proffered instruction and such error was not harmless.[2] *See Barnier*, 119 Nev. at 132, 67 P.3d at 322; NRS 178.598.

Accordingly, for the reasons set forth above, we reverse the judgment of conviction and remand this matter to the district court for a new trial.

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Gibbons

---

[2]Because we are reversing and remanding for a new trial, we need not address Mathews' additional claims of error.