**EYE ASSOCIATES, P.C.,**
**Plaintiff–Appellant,**

v.

**INCOMRX SYSTEMS LIMITED PART-**
**NERSHIP, Defendant–Appellee.**

No. 1007, Docket 89–9164.

United States Court of Appeals,
Second Circuit.

Argued March 13, 1990.
Decided Aug. 15, 1990.

Augustus R. Southworth, III, Waterbury, Conn. (Gager, Henry & Narkis, Waterbury, Conn., of counsel), for plaintiff-appellant.

Robert C. Gerrard, Boston, Mass. (Davis, Malm & D'Agostine, Boston, Mass., of counsel), for defendant-appellee.

Before KEARSE, CARDAMONE and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

We review on this appeal for the first time the Connecticut Business Opportunity Investment Act, Conn.Gen.Stat. § 36–503 *et seq.* (Act). A business opportunity often is nothing more than an occasion for an investor to experience disappointment. When the Connecticut legislature passed the Act it sought to protect its citizens from "business opportunities" such as "chain letter" types of franchises and "worm farm companies" that sell opportunities by convincing investors that—with a modest investment—they can make $200–$300 a week with little or no work. Joint Standing Committee Hearings of Connecticut Legislature, General Law, Part 4, 913–1227, at 1–2 (1979).

Here the district court concluded that no business opportunity was offered for sale and dismissed the disappointed buyer's complaint brought under the Act. But like drift-net fishing the Connecticut legislature intended its cast to be wide and deep so that it might cover all business opportunities, not just those of unscrupulous operators promising the miracle of millions for an hour's work.

The appeal brings before us an opinion and order from the United States District Court for the District of Connecticut (Dorsey, J.) filed on October 17, 1989. The order granted IncomRx Systems Limited Partnership (IncomRx) summary judgment dismissing a complaint brought under the Act by Eye Associates, P.C. (Eye Associates). Because in our view there are genuine issues of material fact as to whether IncomRx sold Eye Associates a business opportunity as defined in the Act, we reverse the order appealed from and remand the case for trial.

## FACTS

Eye Associates is a professional corporation organized and existing under the laws of Connecticut providing ophthalmic care services. IncomRx is a Delaware limited partnership with its principal place of business in Massachusetts that supplies, leases and sells computerized billing and office systems to medical practices. Among these services is a "recovery" service whereby IncomRx analyzes a medical provider's records to ascertain what bills are outstanding and who is the appropriate payor. IncomRx also provides a "practice automation" service which involves leasing computer hardware and software to the medical provider.

In January 1987 Eye Associates entered into a Recovery Services Agreement with IncomRx under which Eye Associates obtained the recovery service in exchange for its agreement to pay IncomRx one-half of all sums collected through the recovery program. On May 18, 1987 the parties entered into two additional contracts: a Leasing and Service Agreement whereby IncomRx supplied its practice automation service, and a letter agreement providing interim billing services before the Leasing Agreement took effect. The parties entered into a fourth agreement on May 19 (Marketing Agreement or Agreement) granting Eye Associates "exclusive rights to market IncomRx systems and services in Connecticut" for $1 million plus 50 percent of recovery service collections up to a ceiling of $1 million. Under Paragraph 5.4 of the Marketing Agreement, IncomRx agreed to provide Eye Associates, on request, with marketing, training and sales materials, although Eye Associates acknowledged that sales and marketing were its responsibility. On June 2 IncomRx supplied Eye Associates with a Multiphase Plan that outlined, among other subjects, a marketing and support program to assist Eye Associates in marketing IncomRx's systems.

In July 1987 Eye Associates refused to make payment under the agreements and filed suit in Connecticut state court, which on IncomRx's petition was later removed to the District Court of Connecticut on February 24, 1988. In its amended complaint dated August 1, 1988 Eye Associates alleged that IncomRx sold them a business opportunity within the meaning of the Act and violated, *inter alia*, the registration, disclosure, bond security, appointment of attorney and fee requirements of the Act. *See* Conn.Gen.Stat. §§ 36–505 to 36–510. IncomRx moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Rule 56. It asserted that under the Act the rights Eye Associates received under the Marketing Agreement did not present a "business opportunity," IncomRx was not a "seller," and IncomRx did not seek to "enable Eye Associates to start a new business."

The district court granted IncomRx's motion for summary judgment, specifically declining to find that IncomRx was a seller under the Act because "[t]he Marketing Agreement appears to have arisen from a mutually beneficial business arrangement, rather than from solicitation by either party." *Eye Associates, P.C. v. IncomRx Systems,* No. H–88–126 (PCD), slip op. at 5 (D.Conn. Oct. 17, 1989). Moreover, since it found no contract provision requiring IncomRx to supply Eye Associates with a sales or marketing program, the district court also did not equate the rights under the Marketing Agreement with a business opportunity under the Act. *Id.* at 5–7. Eye Associates appeals from the order dismissing its complaint.

## DISCUSSION

The Business Opportunity Investment Act was "enacted with the purpose of preventing the misrepresentations and fraudulent practices involved in business opportunity investment sales and the financial losses and hardships to investors which result therefrom." Woolf, *The Connecticut Business Opportunity Investment Act,* 54 Conn.B.J. 415, 415 (1980). Its requirements include registration of business opportunities with the Connecticut Banking Commissioner (Commissioner) prior to sale, disclosure of information to prospective purchasers to enable them to make a ra-

tional purchase decision, and under certain circumstances the posting of a bond. *Id.* at 416. Enforcement may be made by the Commissioner, Conn.Gen.Stat. § 36–515, or by private purchaser-investors injured by violations of the Act, *id.* § 36–517(b).

In order to establish a violation, a purchaser-investor must show that he was sold a business opportunity. The Act defines a seller as "a person who is engaged in the business of selling or offering for sale business opportunities." *Id.* § 36–504(4). The definition of business opportunity is, in pertinent part,

> the sale or lease, or offer for sale or lease of any products, equipment, supplies or services which are sold or offered for sale to the purchaser-investor *for the purpose of enabling the purchaser-investor to start a business,* and in which *the seller represents ... that [it] will provide a sales program or marketing program to the purchaser-investor ....*

*Id.* § 36–504(6) (emphasis supplied).

In granting summary judgment, the district court concluded that IncomRx was not a seller of a business opportunity as a matter of law, and in examining the papers before it found no genuine issues of material fact presented. Fed.R.Civ.P. 56(c). We review a grant of summary judgment *de novo. See, e.g., H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989). The district court is charged upon a motion for summary judgment with determining whether there is sufficient evidence to sustain a verdict for the nonmoving party; it should not weigh the evidence and resolve factual issues raised. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). Although the nonmovant may not defeat the motion by offering a mere "scintilla of evidence," *id.* at 252, 106 S.Ct. at 2512, "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *id.* at 248, 106 S.Ct. at 2510.

In order for Eye Associates to establish IncomRx's violation of the Act it must persuade the trier of fact that IncomRx is a seller of marketing rights, which it sold to Eye Associates to enable Eye Associates to start a business, and that IncomRx represented that it would supply Eye Associates with a sales or marketing plan.

### I *Whether IncomRx is a Seller*

As noted earlier, the term seller is broadly defined as a person engaged in the business of selling. The terms " '[s]ale' or 'sell' include[ ] every contract of sale of, contract to sell, or disposition of a business opportunity or interest in a business opportunity for value." Conn.Gen.Stat. § 36–504(5)(A). Under the plain language of the statute, IncomRx "engaged in the business of selling" when it entered into the Marketing Agreement with Eye Associates disposing of all its marketing rights in Connecticut. Determining that IncomRx was not a seller because it thought the Agreement arose from a mutually beneficial business arrangement, the district court incorrectly read in a requirement that IncomRx must have *solicited* Eye Associates in order for it to have sold a business opportunity. Quite the contrary, the Act clearly states that sales include every "contract to sell ... a business opportunity for value." No requirement of solicitation is included.

IncomRx argues that it is not "engaged in the business of selling or offering for sale business opportunities" so as to be a seller within the meaning of the statute, *see id.* § 36–504(4), because it sold at most only one business opportunity. However, the Act does not clearly state that companies selling a single business opportunity are exempt from its coverage. On remand, therefore, the district court will have to determine whether the sale of a single business opportunity brings the seller within the reach of the statute.

If the court decides that there is such an exemption, the question will then arise of whether IncomRx falls under it. Although we express no opinion on this issue, we do note that at oral argument before this Court, the possibility was raised that IncomRx may have offered to sell the mar-

keting rights to its recovery service to purchasers in other states or to practitioners of other medical specialties in Connecticut. Whether this occurred would be a question of fact to be resolved by the trier of fact.

## II  *Whether the Agreement Enabled Eye Associates to Start a Business*

■ The district judge also found that IncomRx did not enter into the Marketing Agreement "for the purpose of enabling [Eye Associates] to start a business." Conn.Gen.Stat. § 36–504(6). He apparently came to this conclusion based upon the affidavit of George Belleau, the Chief Executive Officer of IncomRx, which averred that Eye Associates had planned to purchase other ophthalmology practices in Connecticut and wanted to keep IncomRx from applying recovery services and raising the price of the Connecticut practices; "after Eye Associates purchased these practices at a lower price, it planned to have recovery services performed on such practices to provide Eye Associates with additional revenues." Belleau's view is supported by Eye Associates' long-term plan to expand its present business.

Yet substantial evidence that Eye Associates planned to start a new business as a result of its dealing with IncomRx is derived from the affidavit of Dean Yimoyines, former President of Eye Associates, who states that the Agreement facilitated "a totally new business undertaking by Eye Associates." Yimoyines' view is buttressed by Paragraph 6.7 in the Agreement that gave IncomRx "an option to acquire ... four percent (4%) of the initial equity of a corporation to be organized primarily by the shareholders of Eye Associates for the purpose of entering into agreements with eye care providers for the management and administration of their business affairs."

To resolve this conflicting evidence the district court had to determine the intentions of IncomRx and Eye Associates when they entered into the Marketing Agreement. Resolution of this dispute is not properly made on a motion for summary judgment, where the district judge is charged with "issue—finding not issue—

resolution." *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir.1982); *see* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2730 at 240, § 2730.1 (2d ed. 1983).

Moreover, a finding that Eye Associates intended to use its exclusive marketing rights to acquire other Connecticut practices at a low cost would not preclude a jury's deciding that the Agreement enabled Eye Associates to alter the nature of its existing business—providing ophthalmic services—to such an extent that it amounted to a new business. Authority for this conclusion is found in the Connecticut Commissioner's opinions that indicate that "[a]ny substantial changes, modifications or additions should be construed so as to preclude [sellers] from relying upon the 'existing business' concept because of the substantive change in the nature of the business." Woolf, *supra*, at 419; *see, e.g.*, State of Connecticut, Office of the Banking Commissioner, Interpretive Opinion *In re Suma, Incorporated* (Mar. 25, 1982) (agreement giving purchaser-investors right to sell and market aircraft would be interpreted as starting a new business notwithstanding that purchaser-investors already sell other transportation vehicles). Thus, a trier of fact might readily find that the Agreement enabled Eye Associates to start a business of buying undervalued Connecticut practices and increasing their value upon implementation of IncomRx's recovery services, notwithstanding Eye Associates' preexisting plans for expansion.

Taking all inferences as we must in favor of Eye Associates, the nonmoving party, there is consequently a genuine issue of material fact whether the Marketing Agreement was entered into for the purpose of enabling Eye Associates to start a business and summary judgment was improperly granted on this issue.

## III  *Whether IncomRx Represented that it Would Supply a Sales or Marketing Program*

■ To demonstrate that a business opportunity was offered within the meaning

of the Act also requires a representation by the seller that it will "provide a sales program or marketing program to the purchaser-investor." Conn.Gen.Stat. § 36–504(6)(D). The terms "sales program" and "marketing program" are not defined by the Act. In interpreting these terms, the Commissioner has stated: "There is no traditional or broad based definition of a 'sales program or marketing program' which would apply to all business opportunity arrangements. Rather, the application of Section 36–504(6)(D) of the Act is based on a case by case analysis." State of Connecticut, Office of the Banking Commissioner, Interpretive Opinion *In re Vendx Marketing, Inc.*, at 2 (Feb. 24, 1987); *see also* State of Connecticut, Office of the Banking Commissioner, Interpretive Opinion *In re Ad–Venture 4000, Inc.*, at 2 (Jan. 21, 1985) (same); State of Connecticut, Office of the Banking Commissioner, Interpretive Opinion *In re Acro–Extrusion Corp.*, at 1 (Nov. 21, 1984) (same).

Eye Associates contends that IncomRx agreed to supply a sales or marketing program under Paragraph 5.4 of the Agreement and in fact did supply such a plan as part of the Multiphase Plan. IncomRx asserts to the contrary that Paragraph 5.4 did not obligate it to supply such a plan and the Multiphase Plan did not constitute such a program. The district judge adopted IncomRx's position and held that as a matter of law the Agreement did not obligate IncomRx to supply a sales or marketing plan and the Multiphase Plan did not constitute such a plan.

Paragraph 5.4 reads:

IncomRx will provide Eye Associates, on request, with reasonable quantities of marketing materials, training materials and other sales materials then used by IncomRx, at the expense of Eye Associates. IncomRx will also provide Eye Associates with training and sales support reasonably requested by Eye Associates, it being acknowledged by Eye Associates that sales and marketing are Eye Associates' responsibility.

We find this paragraph ambiguous regarding whether IncomRx was obligated to supply Eye Associates with a sales or marketing program. The fact that IncomRx agreed to provide marketing and sales materials and training upon Eye Associates' request indicates that IncomRx did contemplate assisting Eye Associates in developing marketing strategy. But, the explicit statement that sales and marketing are Eye Associates' responsibility suggests that IncomRx was not responsible for Eye Associates' sales and marketing program.

■ Where contract language is susceptible of different meanings, the nonmovant on a summary judgment motion must be given an opportunity to present extrinsic evidence to establish what was intended by the written words. *See Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.1985); *Long Island Airports Limousine Serv. Corp. v. Playboy–Elsinore Assocs.*, 739 F.2d 101, 103 (2d Cir. 1984); *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2730.1, at 265–66 & n. 2 (2d ed. 1983). Because the Agreement is ambiguous regarding IncomRx's role in supplying sales and marketing training and materials, the district court improperly adopted IncomRx's version of the contractual language.

At trial the jury will need to consider whether the Multiphase Plan, an advertisement placed in a Hartford, Connecticut newspaper by IncomRx seeking a sales/marketing professional for the Connecticut region, and oral statements, allegedly made by IncomRx executives prior to the execution of the Agreement, support a finding that under the Agreement IncomRx contracted to supply a sales or marketing program. The district court was of the view that pre-Agreement oral statements indicating IncomRx's intention to supply a sales or marketing program could not be considered because "[a]ny prior oral agreements were superseded by and merged in the Agreement."

■ Although Massachusetts and Connecticut state common law [1] and the Agree-

---

**1.** We need not reach the choice-of-law issue    raised by Paragraph 11.4 of the Marketing

ment's own merger clause mandate that the Marketing Agreement constitute the entire obligation binding on the parties, a jury may consider parol evidence, such as oral statements antedating the Agreement, to interpret ambiguous contract language. *See Kronholm v. Kronholm,* 16 Conn.App. 124, 131, 547 A.2d 61, 65 (1988); *Petricca Constr. Co. v. Commonwealth,* 13 Mass. App. 981, 432 N.E.2d 545, 546 (1982); *see also Long Island Airports,* 739 F.2d at 103–04. Consequently, at trial the jury may consider the pre-Agreement oral statements alleged in Yimoyines' affidavit to determine whether Paragraph 5.4 required IncomRx to supply a sales or marketing program to Eye Associates.

## CONCLUSION

For the reasons stated we reverse the district court's grant of summary judgment. The record is rife with genuine factual disputes as to whether IncomRx was a seller of a business opportunity pursuant to the Connecticut Business Opportunity Investment Act. Although IncomRx may not have sought to sell Eye Associates a sham business opportunity—such as the "worm farm" operations that the Connecticut Legislature sought to ferret out by this legislation—IncomRx still may be subject to the Act's requirements.

Reversed and remanded for trial.

---

Agreement that mandates Massachusetts law govern construction of the Agreement because

Connecticut and Massachusetts law are the same on all points relevant to this appeal.