John GUZZELLO, Plaintiff,

v.

John VENTEAU, First American Title Company of Nevada, William Smith, and Kerrie Kissane, Defendants.

No. CV 90–3578 (ADS).

United States District Court, E.D. New York.

March 31, 1992.

Spada, Ardam & Ershowsky, P.C., Smithtown, N.Y., for plaintiff; Lawrence J. Spada, of counsel.

Robert A. Carpenter, P.C., Mineola, N.Y., for defendant John Venteau.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

On December 17, 1991, the Court notified the attorneys for both parties in this action that the Court was converting the defendant John Venteau's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), to a motion for summary judgment pursuant to Rule 56. At that time, the parties were given an opportunity to submit affidavits and other documentary evidence, with an indication that the Court would specifically be reviewing the issues of *res judicata* and collateral estoppel in relation to two court actions in the State Court of Clark County, Nevada.

Before the Court at this time are the documents submitted by counsel for both parties in response to the Court's December 17, 1991 notification. For the reasons that follow, the Court finds that the claims raised here either actually were or could have been raised in the state court in Nevada, and therefore the doctrine of collateral

estoppel applies to preclude relitigation of the issues raised here. Therefore the defendant's motion for summary judgment is granted.

## I. BACKGROUND

The complaint in this action alleges a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and pendent state claims of prima facie tort, assault and battery, and intentional interference with a business relationship. Subject matter jurisdiction is based on 28 U.S.C. § 1331, in that the RICO claim "arises under" the laws of the United States.

By Order dated May 31, 1991, the Court dismissed with prejudice the plaintiff Guzzello's claims against defendants First American Title Company of Nevada, William Smith and Kerrie Kissane, memorializing the Court's oral decision of March 22, 1991, dismissing those claims with prejudice pursuant to Fed.R.Civ.P. 12(b)(2) (lack of in personam jurisdiction), without costs and sanctions.

The substantive allegations of the complaint in relation to the remaining defendant, John Venteau, concern a 1987 business transaction between the plaintiff Guzzello, defendant Venteau, and a Mr. Calvin V. Thornton, in connection with the purchase of 26.71 acres of vacant land in Las Vegas, Nevada. Guzzello, Venteau and Thornton were to be equal shareholders in a Nevada corporation formed to purchase, hold title to and develop the property.

According to the complaint, the parties' agreement was amended at the closing, when Venteau "induced" Guzzello and Thornton to sign a new agreement which provided Guzzello and Thornton only with an option to purchase a one-third interest in the property. The complaint also alleges that when Guzzello sought to exercise his option in 1988, Venteau unilaterally increased the option price, conspired with others to "intimidate" and "threaten" him, and "coerced" him into executing a $120,000 promissory note in Venteau's favor. The complaint further alleges that Venteau has "continuously" attempted to collect a $300,000 debt from Guzzello since 1987, which in fact was owed to Venteau by another person.

Previously, defendant Venteau moved for a stay of the instant action, in light of a pending action in the Nevada state court, Clark County, entitled *Denise Walker v. Venteau, et al.*, Case No. A280452, an action brought to quiet title to the Nevada property at issue, or, in the alternative, to dismiss the complaint for failure to state a claim. In addition, Venteau moved for the imposition of sanctions pursuant to Fed. R.Civ.P. 11.

In support of his motions, Venteau submitted an affidavit in which he stated that in the Nevada action he and Guzzello had cross-claims against each other and that Guzzello's counsel had funded Denise Walker's lawsuit. Guzzello's cross-claims against Venteau included civil conspiracy, breach of contract, breach of implied covenant of good faith and fair dealing, duress and anticipatory repudiation.

In addition, Venteau filed two memoranda of law. Significantly, both memoranda were devoted exclusively to Venteau's motion to stay, and he provided no legal authority to the Court in support of his motion to dismiss the RICO claim or for the imposition of sanctions.

On June 5, 1991, this Court denied, without prejudice, Venteau's motions to dismiss for failure to state a claim and for sanctions. However, the Court granted Venteau leave to renew the motions within thirty days if made in accordance with the Federal Rules of Civil Procedure, the Local Civil Rules of the Eastern District of New York, and the Court's own rules of motion practice.

## II. PROCEDURAL SETTING

Venteau renewed the motions within the mandated thirty day period. Having converted the Rule 12(b)(6) motion into one for summary judgment, the Court now looks to the documentary evidence and affidavits submitted by both parties.

In his original notice of motion to dismiss the complaint, the defendant Venteau

moved for dismissal on the basis of the plaintiff's alleged failure to plead a RICO claim with the requisite particularity as well as on grounds of *res judicata* and collateral estoppel occasioned by the Nevada state court action. The defendant also moved for sanctions.

In his July 3, 1991 affidavit in support of the motion, counsel for the defendant alleges that the complaint "fails as a matter of law to allege a pattern of racketeering activity as required by the RICO statute" and "does not adequately allege that each defendant participated in the affairs of a particular enterprise to [sic] a pattern of racketeering activity" (July 3, 1991 Carpentier Affidavit, ¶¶ 8–9). Counsel deduces that the complaint "not only fails for its vagueness in these respects, but it is also inadequate under Rules 9(b) and 12" (¶ 10).

In regard to the consolidated Nevada state court actions, counsel for the plaintiff states that on "April 9, 1991, the Judge in the consolidated Las Vegas state court actions ordered that the Discovery Commissioner's Report and Recommendations be affirmed and adopted" (¶ 13). The Commissioner had recommended that plaintiff Guzzello's answers and counterclaims be "dismissed with prejudice." Therefore, counsel argues, this instant action should be dismissed based upon the doctrines of *res judicata* and collateral estoppel.

The defendant himself also submitted an affidavit as part of the original motion to dismiss. In that affidavit, Venteau states that the cross-complaints against him in the Las Vegas action "were virtually identical, to wit: a) civil conspiracy; b) breach of contract; c) breach of implied covenant of good faith and fair dealing; d) duress; e) anticipatory repudiation" (July 3, 1991 Venteau Affidavit, ¶ 9). Venteau goes on to state the following:

"10. Despite the obvious effort of John Guzzello to make every conceivable claim against me involving a certain piece of real property located in Las Vegas and interweaving and repeating various complaints against me, all of them boil down to resolving the issue of ownership to the real property in Las Vegas.

\*   \*   \*   \*   \*   \*

12. Prior to Guzzello being *dismissed "with prejudice"* in the Las Vegas litigation, his New York attorney, Lawrence J. Spada, Esq. . . . . wrote a letter to the Judge in the Las Vegas lawsuits (Judge Lehman) on Guzzello's behalf trying to explain why Guzzello did not attend a continued deposition. Mr. Spada admitted that he was not admitted to the Nevada courts but was writing said letter on behalf of Mr. Guzzello irrespective of the fact that he had no standing to appear in order to explain Mr. Guzzello's non-appearance [See attached Exhibit "E"].

\*   \*   \*   \*   \*   \*

15. The summons and complaint in the instant matter seems "dressed up", especially in light of the fact that John Guzzello, plaintiff herein, has on two previous occasions in both Las Vegas lawsuits (which were consolidated) cross-complained against me for causes of action contained in the instant complaint and only now comes before this tribunal with additional alleged causes of action, one of which appears to be federally related. . . . ."

In his initial response dated August 9, 1991, counsel for the plaintiff urged the Court to decide the motion based upon the four corners of the complaint, and not to consider any documents outside the complaint. Had this remained a motion to dismiss under Rule 12(b), the Court would have done just that. However, now that the motion has been converted to one for summary judgment, the Court considers all of the relevant documents and affidavits.

The plaintiff argues that neither *res judicata* nor collateral estoppel should serve to bar this action. Counsel relies upon an New York Appellate Division, Fourth Department case for the proposition that collateral estoppel applies only to issues which were actually litigated, not to those which could have been litigated (*Manitou Sand & Gravel Co. v. Ogden*, 81 A.D.2d 1019, 440 N.Y.S.2d 140, *rev'd on other grounds*, 55

N.Y.2d 790, 447 N.Y.S.2d 250, 431 N.E.2d 975 [4th Dept.1981]). According to the plaintiff, the issue of a federal RICO violation was never litigated nor alleged in the first action, and there was no full and fair opportunity to contest. Furthermore, counsel contends, the plaintiff could not have brought a federal RICO violation in the state court of Nevada.

Counsel for the plaintiff further urges the Court to consider the plaintiff's status in the federal witness protection program, which made it difficult for him to travel to Nevada to attend to these lawsuits.

In the most recent responses from counsel for both parties, prompted by the Court's conversion of the motion to one for summary judgment, defendant's counsel states that "the operative facts allegedly pled in both the instant federal complaint and the prior Nevada state court litigation are virtually identical" (January 6, 1991 Carpentier Affidavit, ¶ 6). On that basis, he urges the Court to dismiss the action.

In Defendant's Memorandum of Law, counsel adds that "[a]ny of the alleged events which plaintiff purports rise to the level of a RICO violation occurred prior to the institution of the Las Vegas lawsuit. Yet, Plaintiff's previous Nevada attorney [James Jimmerson, Esq.] did not see fit to include that purported violation in the Nevada state court litigation" (Defendant's Memorandum of Law at p. 2). According to defendant's counsel, the testimony of Denise Walker further demonstrates that plaintiff Guzzello's New York lawyer, Mr. Spada, was in contact with his Las Vegas attorney, Mr. Jimmerson, yet Jimmerson brought no RICO claim in the Las Vegas action.

Both parties have submitted documents from the Clark County, Nevada action. Plaintiff's counsel sets forth at length the steps taken by him to alert the Nevada court to Mr. Guzzello's circumstances as part of the federal witness protection program while asking for an extension of time in which to have Mr. Guzzello's deposition taken. According to counsel, "Judge Lehman apparently gave that letter and the contents therein no consideration" (January 3, 1992 Spada Affidavit, ¶ 5). Given the plaintiff's circumstances, counsel contends that he did not have a full and fair opportunity to have his case heard in the state court in Las Vegas, and therefore, summary judgment should not be granted.

## III. THE GOVERNING LAW

### A. *The Summary Judgment Standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir. 1990], and the movant is entitled to judgment as a matter of law (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed.R.Civ.P. 56[c]. The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56[e]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990]).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). If there

is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. Incomrx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir. 1990]).

### B. *Collateral Estoppel*

Pursuant to 28 U.S.C. § 1738, a federal court is required to apply the rules of collateral estoppel of the state in which a prior judgment was rendered, where the same issues are later raised in federal court (*see Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 [1984] [citing cases]; *see also Khandhar v. Elfenbein*, 943 F.2d 244, 247 [2d Cir.1991]; *Antonsen v. Ward*, 943 F.2d 198, 200 [2d Cir.1991]). Accordingly, the Court turns to the Nevada law on the issues of *res judicata* and collateral estoppel.

It is well settled that "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause" (*Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 [1980]). When a state court judgment is offered for *res judicata* or collateral estoppel effect, the federal court must determine, based on state law, whether the judgment is final and therefore conclusive in the federal court (*Turnbow v. Pacific Mut. Life Ins. Co.*, 934 F.2d 1100 [9th Cir.1991] [construing Nevada law], *citing Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 [9th Cir.1985]).

Under Nevada law, a judgment on the merits of an issue bars further consideration of that issue (*Brown v. Capanna*, 105 Nev. 665, 782 P.2d 1299, 1301 [1989]). Furthermore, a party invoking collateral estoppel must show, first, that the issue was actually litigated in the first proceeding and necessarily determined and, second, that the parties in the second proceeding are the same or in privity with those in the first proceeding (*see Marine Midland Bank v. Monroe*, 104 Nev. 307, 756 P.2d 1193 [1988]).

Nev.R.Civ.P. 41(b) provides, in relevant part:

> "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under rule 19, operates as an adjudication upon the merits."

With these principles in mind, the Court now turns to the issue of whether the plaintiff is precluded from maintaining this action based upon the previous action in the Nevada state court.

## IV. DISCUSSION

To invoke the doctrine of collateral estoppel, a party must establish that: (1) an identity of issue which has necessarily been decided in the prior action and is decisive of the present action; and (2) a full and fair opportunity to contest the decision claimed to be controlling (*see* 9 Carmody–Wait 2d, § 63:432). In applying these principles, the Court looks to the documents supplied by the parties relevant to the state court action in Las Vegas.

Venteau has provided an affidavit from one Bruce Judd, Esq., who states that he represented the defendant in the *Walker v. Venteau, et al.* action in Clark County, and that he received pleadings from Guzzello, through his lawyers, Jimmerson & Davis, who were also representing Walker (Judd Affidavit, ¶ 3).

The Court hereafter refers to the two Las Vegas actions as the "Walker" and "Scortino" actions—which were consolidated in the Clark County District Court. In the Walker action, cross-defendant Guzzello (plaintiff in the instant action) filed an answer to Venteau's crossclaim. In that document, Guzzello brought crossclaims for: (1) civil conspiracy, based upon alleged coercion, intimidation and threats by Ven-

teau and another defendant, Scortino, forcing Guzzello to execute a promissory note and preventing him from exercising his rights under a real property option agreement; (2) breach of contract, based upon Venteau's unilateral action in unlawfully increasing Guzzello's option price, through an addendum to the option agreement, and coercion in getting Guzzello to sign the addendum; (3) breach of an implied covenant of good faith and fair dealing, based upon Venteau's alleged hiring of a known felon to prevent Guzzello from exercising his option rights through acts of coercion, intimidation and bodily harm, including an alleged threat to kill Guzzello; (4) duress, based upon Venteau's alleged coercion and threats which took away Guzzello's right to exercise his free choice when forced to sign the promissory note; and (5) anticipatory repudiation, based upon the unlawful increase in the option price and the resulting coercion, forcing Guzzello to sign an addendum, constituting an anticipatory repudiation of the initial option agreement (*see* Venteau Affidavit, Exhibit B).

The identical crossclaims were brought by Guzzello against Venteau in the Scortino action (*see* Venteau Affidavit, Exhibit G; Spada Affidavit, Exhibit D).

Wrapped in the cloak of the RICO statute, the plaintiff brought a single cause of action in the instant complaint, involving the same land development project in Nevada, the same option agreement, the same allegations of intimidation, coercion, threats, and assault. The only difference asserted here is the movement of the "conspiracy" claim into the framework of 18 U.S.C. § 1962(d).

In *Brown v. Capanna, supra,* 105 Nev. 665, 782 P.2d 1299, 1301 (1989), the plaintiff's two daughters brought a negligence and informed consent action against a physician following the death of their mother (*id.* at p. 667, 782 P.2d 1299). The physician moved for summary judgment on the negligence allegations, and the plaintiffs stipulated to their dismissal, leaving only the informed consent cause of action.

Subsequently, when the daughters had received more information through the dep-

ositions of expert witnesses possibly indicating that the doctor had been negligent, they sought leave to amend the complaint under Nev.R.Civ.P. 15(a) (*id.*). The district court denied the motion on grounds of *res judicata.* On appeal, the Nevada Supreme Court affirmed the district court's decision, noting that "the issue of whether [physician] was negligent in his preoperative care and treatment of Stokmans was resolved on the merits when the court ordered partial summary judgment, and the district court properly denied the amendment which would have once again alleged negligence" (*id.* at p. 669, 782 P.2d 1299). The *Capanna* test has been met in this case.

Having reviewed all of the documents and exhibits, the Court finds that the defendant has met his burden of establishing (1) an identity of issue which has necessarily been decided in the prior action and is decisive of the present action; and (2) the plaintiff had a full and fair opportunity to contest the decision claimed to be controlling. The Court further notes that state courts possess concurrent jurisdiction to adjudicate civil RICO claims (*see Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 [1990]). The plaintiff could have brought his RICO claim in the state court of Nevada, but did not choose to do so.

Accordingly, because the RICO claims which are the basis for this lawsuit against defendant Venteau in the federal court, are premised on the same claims as those which were presented to the state court in Nevada, and that court having passed upon the merits of the case in dismissing the causes of action with prejudice, the doctrine of collateral estoppel now bars relitigation of those issues. This Court finds that plaintiff Guzzello was afforded a full and fair opportunity to make at least some showing on his claims in state court.

With regard to the defendant's motion for sanctions, Rule 11 was enacted to "discourag[e] dilatory and abusive litigations tactics and eliminat[e] frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process" (*McMahon v. Shearson/Ameri-*

*can Express, Inc.*, 896 F.2d 17, 21 [2d Cir. 1990]). Sanctions should be sparingly imposed, however, and care should be taken to avoid chilling creativity or stifling enthusiasm (*see Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 322 [2d Cir.1990]). The Court finds that neither the plaintiff nor counsel violated Rule 11, and therefore, the Court declines to impose sanctions. Accordingly, the defendant's motion is denied.

## V. CONCLUSION

Based upon the foregoing, the defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, is granted and the complaint is dismissed.

However, the defendant's motion for the imposition of sanctions, pursuant to Fed.R.Civ.P. 11, is denied.

The Clerk of the Court is hereby notified that this action closes the case.

SO ORDERED.