[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (#130)
The defendants' move for summary judgment as to counts one, four and five.
On May 3, 2000, the plaintiffs, Brian Hackett and David Henriques, filed a complaint against the defendants, Bill's Floor Sanding, Inc., and William Fournier, alleging that the defendants violated the Connecticut Business Opportunity Investment Act (count one), engaged in common law fraud and misrepresentation (count two), committed a breach of contract (count three), violated the Connecticut Unfair Trade Practices Act (CUTPA) (count four) and violated the Securities Exchange Act of 1934 (count five). The plaintiffs allege that between 1998 and 1999, Fournier, as principal of Bill's Floor Sanding, Inc., attempted to induce the plaintiffs, who were at that time employees of the defendants, into entering into a franchise agreement. Further, the plaintiffs allege that Fournier represented that they could earn a substantial profit from the franchise and that, as a result of these representations, the plaintiffs invested time, money and effort in Bill's Floor Sanding, Inc. Fournier also allegedly represented that he would provide a sales program or marketing program for the plaintiffs. The plaintiffs allege that Fournier controlled the finances of the franchise and represented that the advice he gave to the plaintiffs was appropriate based on his experience in the industry. CT Page 6985
As a result of this arrangement, the plaintiffs allege in count one that the defendants are in violation of General Statutes § 36b-60 et seq. for failing to provide the plaintiffs with the information required by General Statutes § 36b-63[1] and that the defendants have failed to register with the banking commissioner as required by § 36b-62.[2]
In count two, the plaintiffs allege that the defendants made intentional misrepresentations and omissions. Further, in count three, the plaintiffs allege that the defendants breached their contract with the plaintiffs by failing to pay vendors in a timely fashion, failing to perform necessary governmental filings and failing to account properly to the plaintiffs. Count four alleges that the defendants have violated CUTPA. Finally, in count five, the plaintiffs allege that the franchise agreement is an investment contract security within the meaning of the Securities Exchange Act of 1934 and the defendants have violated the act by selling an unregistered security with the intent to deceive or mislead.
On March 1, 2002, the defendants moved for summary judgment as to counts one, four and five on the ground that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. In support of their motion, the defendants submitted a memorandum of law, an affidavit by Fourier and copies of the certified deposition testimony of the plaintiffs. On March 13, 2002, the plaintiffs filed a memorandum of law in opposition to the motion. The plaintiffs also submitted certified copies of the plaintiffs' deposition testimony.
Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a mailer of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater New York Mutual Ins Co.,259 Conn. 527, 550, 791 A.2d 489 (2002). "A material fact. . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 560, 783 A.2d 993 (2001).
 A The Business Opportunity Investment Act
The defendants move for summary judgment on the ground that there is no CT Page 6986 genuine issue of material fact that the business arrangement at issue does not qualify as the type of activity regulated by the Business Opportunity Investment Act (BOIA) because the plain language of General Statutes § 36b-61, which defines "business opportunity," and the legislative history of this statute indicate that this is not the type of transaction governed by the BOIA. Specifically, the defendants argue that the plaintiffs did not allege and cannot prove that the defendants sold or leased, or offered to sell or lease, to them "products, equipment, supplies or services" for the purpose of starting a new business or that the defendants made any one of the four representations identified in § 36b-61. The plaintiffs contend that according to the deposition testimony submitted by both parties in support of their respective positions there is a genuine issue of material fact as to whether the arrangement between the parties constituted the sale of a "business opportunity."
The BOIA "was enacted to police business opportunities which are characterized by high pressure salesmen who flash in and out of motel rooms and are gone before the investor knows he's been fleeced." (Internal quotation marks omitted.) Fineman v. Armstrong WorldIndustries, Inc., 774 F. Sup. 225, 235, rev'd in part,[3] 980 F.2d 171, rehearing denied, cert. denied, 507 U.S. 921, 113 S.Ct. 1285,122 L.Ed.2d 677 (1991). "[T]he Act requires sellers who plan to sell business opportunity investment programs to register such programs with the banking commissioner. Sellers of business opportunity investment programs are also required to provide prospective purchaser-investors with information necessary to make an informed decision before they make payment to the seller. In certain circumstances, sellers of these programs are also required to represent that the purchaser-investor's investments are secured in such a way as to actually provide security in the form of a bond or trust account. Finally, the Act prohibits representations which tend to mislead prospective purchaser-investors." (Internal quotation marks omitted.) Id., 236. If a business opportunity seller fails to comply with specified provisions of the BOIA, uses untrue or misleading statements or fails timely to deliver equipment, supplies, products or services, the purchaser-investor, upon written notice to the seller, may void the contract and receive from the seller all sums paid to the seller. General Statutes § 36b-74 (a). Further, purchasers who are injured by any violation of the BOIA or by the seller's breach of contract may bring an action for recovery of damages, including reasonable attorney's fees. General Statutes § 36b-74 (b).
"The Connecticut Act applies to `sellers' of `business opportunities.' The Act defines `seller' as a `person who is engaged in the business of selling or offering for sale business opportunities.'" Fineman v.Armstrong World Industries, Inc., supra, 774 F. Sup. 236, quoting former CT Page 6987 General Statutes § 36-504 (4), now § 36b-61. General Statutes § 36b-61 (4) defines "seller" as "a person who is engaged in the business of selling or offering for sale business opportunities or any agent or representative of such person." General Statutes § 36b-61
(6) provides in relevant part: "`Business opportunity' means the sale or lease, or offer for sale or lease of any products, equipment, supplies or services which are sold or offered for sale to the purchaser-investor for the purpose of enabling the purchaser-investor to start a business, and in which the seller represents (A) that the seller will provide locations or assist the purchaser-investor in finding locations for the use or operation of vending machines, racks, display cases or other similar devices, or currency-operated amusement machines or devices . . . or (B) that the seller will purchase any or all products made, produced, fabricated, grown, bred or modified by the purchaser-investor using in whole or in part, the supplies, services or chattels sold to the purchaser-investor; or (C) that the seller guarantees, eitherconditionally or unconditionally, that the purchaser-investor will deriveincome from the business opportunity; or that the seller will refund allor part of the price paid for the business opportunity, or repurchase anyof the products, equipment, supplies or chattels supplied by the seller,if the purchaser-investor is unsatisfied with the business opportunity; or (D) that the seller will provide a sales program or marketing program to the purchaser-investor. . . . `Business opportunity' does not include the sale of an ongoing business where the owner of that business sells and intends to sell only that one business opportunity. . . ." (Emphasis added.)
The United States District Court of New Jersey addressed the issue of what constitutes a "business opportunity" under the BOIA in Fineman v.Armstrong World Industries, Inc., supra, 774 F. Sup. 235-36. Fineman
involved a "video magazine" developed for retailers in the floor covering industry. Id., 228. The plaintiffs Fineman, and his corporation, The Industry Network Systems, Inc. (TINS), would sell the monthly video magazine to floor covering distributors, who would in turn sell subscriptions to the program to retailers. Id. Upon becoming a distributor, Fineman would then provide a training program to the distributor at its place of business to teach the distributor how to sell the magazine and improve sales overall. Id. The defendant, Armstrong World Industries, Inc., manufactured floor covering and distributed its products through independent companies. Id. When one of Armstrong's distributors, Stern Company, located in Connecticut declined Fineman's offer, Fineman and TINS filed an action against Armstrong for tortious interference with business relationships and antitrust violations, accusing Armstrong of exerting pressure on Armstrong's distributors to dissuade them from becoming involved with Fineman. Id., 229. After the jury found in favor of Fineman and TINS, Armstrong sought judgment CT Page 6988 notwithstanding the verdict, or, in the alternative, a new trial based on the BOIA. Id. Armstrong argued that TINS was not registered prior to its dealings with Stern and that its failure to register rendered the relationship with Stern unenforceable, and in fact illegal. Id., 232. Thus, Armstrong argued, since the BOIA rendered tenuous or unreasonable any expectation of economic benefit from the relationship, it was entitled to judgment notwithstanding the verdict as to the tortious interference claims based on the plaintiffs' failure to prove the necessary element of reasonable expectation of economic benefit. Id., 231.
The court in Fineman found that the distributorship arrangement for the sale of the video magazine was a business opportunity governed by the BOIA. Id., 236. The court found that the arrangement fell within subsections (C) and (D) of the definition of "business opportunity" because TINS guaranteed bonuses upon sales and represented particular figures which distributors would earn if they signed up as a distributor and because the training program was a marketing program. Id., 236. Thus, the court granted Armstrong's motion for judgment notwithstanding the verdict, finding that, since the Stern-TINS relationship was void as a result of noncompliance with the BOIA, there was, as a matter of law, no reasonable expectation of profit from the relationship to support a tortious interference claim. Id., 241.[4]
In support of their motion, the defendants have submitted an affidavit by William Fournier, the certified depositions of David Henriques and Brian Hackett, copies of legislative history, an article by Brian J. Woolf and copies of Fineman v. Armstrong World Industries, Inc., supra,774 F. Sup. 225 and Eye Associates, P.C. v. IncomRX Systems Ltd.Partnership, 912 F.2d 23 (1990). The defendants rely on the legislative history and the deposition testimony of Hackett and Henriques to show that the plaintiffs did not invest in a business opportunity as defined in the BOIA. (Defendants' Memorandum, Exhibit B, Deposition of David Henriques, May 22, 2001 [Henriques Deposition], pp. 127-28; Defendants' Memorandum, Exhibit C, Deposition of Brian Hackett, October 9, 2001 [Hackett Deposition] pp. 45-50.) Further, the defendants also rely on the deposition testimony of Henriques and Hackett to support their argument that the alleged conduct does not violate the BOIA. (Henriques Deposition, pp. 70, 73, 86-92; Hackett Deposition, p. 73.)
The plaintiffs, in opposition to the motion, also submitted the certified depositions of Henriques and Hackett, along with a copy of an ad placed by the defendants in the yellow pages indicating that franchises in Bill's Floor Sanding were available. The plaintiffs argue that the deposition testimony establishes that a question of fact exists as to whether there was a sale of a business opportunity. (Henriques CT Page 6989 Deposition, pp. 58, 62, 63, 65, 67, 68, 70, 85, 88, 97, 101; Hackett Deposition, pp. 46, 47, 50, 107, 108.)
In the present case, the plaintiffs have met their burden of establishing a genuine issue of material fact exists as to whether the arrangement between the plaintiffs and the defendants was a "business opportunity" as defined by subsection (c) of § 36b-61 (6). The deposition testimony submitted by the plaintiffs indicates that Fourier represented that the plaintiffs would make "a ton of money" from the investment. (Henriques Deposition, p. 70.) Further, Hackett's deposition testimony indicates that Fourier told him that if things did not work out Hackett could have his money back. (Hackett's Deposition, p. 46.) Fournier's affidavit, which was submitted by the defendants in support of their motion, indicates that Fournier did not guarantee that the plaintiffs would get a refund on money invested if they did not derive a profit. (Fourier's Affidavit, ¶ 11). Further, Fourier states in his affidavit that he did not guarantee any particular income to the plaintiffs. (Fourier Affidavit, ¶ 11). These statements are in direct conflict with the deposition testimony submitted to the court by the plaintiffs. Thus, a genuine issue of material fact exists as to whether this arrangement constituted a business opportunity as defined in §36b-61 (6)(C).
The defendants also assert that the BOIA is inapplicable because the plaintiffs did not start a "new business." Specifically, the defendants argue that the plaintiffs performed the very same work as they did before the franchises were created and, therefore, they were merely subcontractors. Thus, the defendants aver that this type of situation does not conform to the definition that the sale of a "business opportunity" must be for the purpose of starting a "new business." See General Statutes § 36b-61 (6). The plaintiffs argue in opposition that the business franchises were "new businesses" to the plaintiffs. Further, the plaintiffs contend that they were merely employees prior to becoming investors and, thus, the BOIA is applicable in the present case.
The defendants rely on Fineman v. Armstrong World Industries, Inc., supra, 774 F. Sup. 225, and Eye Associates, P.C. v. IncomRx SystemsLtd. Partnership, supra, 912 F.2d 23, to support their argument that this arrangement did not enable the plaintiffs to start a "new business." The facts of Fineman have been previously discussed. In finding that the TINS program did constitute a "new business," the court stated that "[i]f the purchaser-investor is in an already existing business, the Act would not apply. It should be noted, however, that the `existing business' concept should not be construed too broadly. . . . [T]he sale of the products, equipment, etc., to a purchaser-investor of an existing business must not CT Page 6990 substantially change, modify or add to the lines of products, equipment, etc., carried by the purchaser-investor." (Internal quotation marks omitted.) Fineman v. Armstrong World Industries, Inc., supra,774 F. Sup. 236-37. The court found that the TINS program was the sale of products entirely new to Stern, namely, a monthly "video magazine" and equipment related thereto. Id.
The facts in Eye Associates, P.C. v. IncomRx Systems Ltd. Partnership, supra, 912 F.2d 23, are as follows. Eye Associates, P.C. (Eye Associates), entered into a Recovery Services Agreement with IncomRx Systems Ltd. Partnership (IncomRx) under which Eye Associates obtained recovery services in exchange for its agreement to pay IncomRx one-half of all sums collected through the program. Id., 25. Eye Associates also entered into several other agreements with IncomRx whereby IncomRx supplied its practice automation service, and a letter agreement providing interim billing services. Id. The parties also entered into an agreement granting Eye Associates exclusive rights to market IncomRx systems and services in Connecticut for $1,000,000 plus 50 percent of amounts recovered up to $1,000,000. Id. IncomRx also agreed to provide Eye Associates with marketing, training and sales materials even though Eye Associates acknowledged that sales and marketing were its responsibility. Id. Finally, IncomRx supplied Eye Associates with a plan that outlined a marketing and support program to assist Eye Associates in marketing IncomRx's systems. Id.
Eye Associates alleged that IncomRx sold them a "business opportunity" within the meaning of the BOIA and violated the registration, disclosure, bond security, appointment of attorney and fee requirements of the BOIA. Id. IncomRx moved for dismissal or, in the alternative, for summary judgment asserting that the rights that Eye Associates received under the agreement did not present a "business opportunity," IncomRx was not a seller and IncomRx did not seek to enable Eye Associates to start a "new business." Id. The District Court agreed with IncomRx and granted its motion for summary judgment. Id.
The Second Circuit Court of Appeals reversed the District Court's decision and, relying on an opinion by the Connecticut banking commissioner, held, inter alia, that a genuine issue of material fact existed as to whether the agreement was entered into for the purpose of starting a "new business." Id., 27. The court relied on an opinion of the Connecticut banking commissioner, which stated that "[a]ny substantial changes, modifications or additions should be construed so as to preclude [sellers] from relying upon the `existing business' concept because of the substantive change in the nature of the business." (Internal quotation marks omitted.) Id. Thus, the court found that "a trier of fact might readily find that the Agreement enabled Eye Associates to start a CT Page 6991 business of buying undervalued Connecticut practices and increasing their value upon implementation of IncomRx's recovery services, notwithstanding Eye Associates' preexisting plans for expansion." Id.
As in Eye Associates, P.C. v. IncomRx Systems Ltd. Partnership, supra, 912 F.2d 27, the deposition testimony in the present case establishes that a genuine issue of material fact exists as to whether the agreement was entered into for the purpose of enabling the plaintiffs to start a new business. The deposition testimony indicates that defendants, in exchange for a $5,000 fee and 35 percent of the profits, agreed to let the plaintiffs run their own floor sanding companies. (Henriques Deposition, p. 62.) Fournier set up separate accounts for the plaintiffs and required the plaintiffs to pay for their own supplies and labor. (Hackett Deposition, p. 56.) Further, the testimony indicates that Fournier required the plaintiffs to pay for the maintenance on vehicles that the plaintiffs used which were owned and supplied by Fourier. (Henriques Deposition, p. 65.) Thus, a trier of fact might find that the arrangement enabled the plaintiffs to start a new business under the BOIA.
In sum, genuine issues of material fact exist as to whether the defendants sold the plaintiffs a "business opportunity" as defined by General Statutes § 36b-61 (6) and whether the plaintiffs started a "new business." Accordingly, the motion for summary judgment as to count one is denied.
 B CUTPA Claim
The defendants contend that the undisputed facts do not satisfy the elements of a CUTPA claim. Specifically, the defendants argue that, at most, the dispute between the parties involves issues of contract and a dispute over the terms of that oral agreement as to expected earnings and responsibility for payments of taxes. Such, they argue, does not amount to a violation of CUTPA. Further, the defendants assert that the plaintiffs have not claimed that they suffered losses caused by an alleged unfair or deceptive trade practice committed by the defendants. In response, the plaintiffs aver that the deposition testimony indicates that there was conduct which could be found unfair and deceptive.
"It is well settled that in determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it CT Page 6992 has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.)Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp., 245 Conn. 1, 43, 717 A.2d 77 (1998); see alsoHartford Electric Supply Co. v. Allen-Bradley Co.,250 Conn. 334, 367-68, 736 A.2d 824 (1999).
"A majority of Superior Court cases support the claim that a simple breach of contract, even if intentional, does not amount to a violation of CUTPA; a claimant must show substantial aggravating circumstances to recover under the Act." York v. A. Deroy Sons General Contractor, Superior Court, judicial district of New London at New London, Docket No. 13538 (October 11, 2001, Leuba, J.); see also Crockwell v. GovernmentEmployees Ins. Co., Superior Court, judicial district of Middlesex at Middletown, Docket No. 90777 (October 2, 2001, Gilardi, J.). "Where the plaintiff alleges sufficient aggravating circumstances, beyond a mere breach of contract that may bring the case within the cigarette rule, the CUTPA claim may withstand a motion [for summary judgment]." (Internal quotation marks omitted.) Benvenuti Oil Co. v. Foss Consultants, Inc., Superior Court, judicial district of New London at New London, Docket No. 542755 (April 6, 1999, Mihalakos, J.), aff'd on other grounds,64 Conn. App. 723, 781 A.2d 435 (2001).
In the present case, the plaintiffs allege that the agreement that the agreement they entered into with the defendant was the product of fraud, deceit and misrepresentation. Moreover, the plaintiffs provide deposition testimony, wherein they state that Fourier made numerous misrepresentations to them concerning profitability and liability for the payment of taxes. (Henriques Deposition, p. 88; Hackett Deposition, p. 107). Because there are allegations beyond mere breach of contract, the court denies the defendants' motion as to count four.
 C Securities Exchange Act of 1934
The defendants argue that the plaintiffs failed to meet the pleading requirements for a claim under the Securities Exchange Act of 1934,15 U.S.C. § 78a et seq., and Rule 10b-5, 17 C.F.R. § 240.10b-5. CT Page 6993 Specifically, the defendants contend that the plaintiffs failed to plead scienter which renders their claim under the Securities Exchange Act insufficient. Further, the defendants assert that the opportunity the plaintiffs allege that Fourier sold does not satisfy Congress' definition of a security as set forth in § 15 U.S.C. § 78c because the plaintiffs never purchased any of the interest in the company nor did they buy any stock, note or a certificate of interest. In opposition to the defendants' arguments, the plaintiffs argue that a genuine issue of material fact exists as to whether the franchise was a security pursuant to the Securities Exchange Act.
The Securities Exchange Act defines "security" as "any note, stock, treasury stock, bond, security future, debenture . . . investment contract . . . any put, call, straddle option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a `security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing. . . ." 15 U.S.C.A. § 78c (a) (10) (West Supp. 2001). This definition is "flexible . . . [and] designed to adapt to the `countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" Nelson v.Stahl, 173 F. Sup. 2 d 153, 164 (S.D.N.Y. 2001), quoting SecuritiesExchange Commission v. W.J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100,90 L.Ed. 1244 (1946). In defining the term "security" the court stated that "form should be disregarded in favor of substance and the emphasis should be on economic reality." Securities Exchange Commission v. W.J.Howey Co., supra, 328 U.S. 301.
An investment contract falls within the definition of a security as defined by the Act. In Howey, the Supreme Court interpreted the term "investment contract." Securities Exchange Commission v. W.J. Howey Co., supra, 328 U.S. 301. The court determined that an investment contract is "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." Id., 298-99; see also Revak v. SEC Realty Corp., 18 F.3d 81, 87 (2d Cir. 1994); State v. Bull Investment Group, Inc., 32 Conn. Sup. 279, 291,351 A.2d 879 (1974).
"A common enterprise within the meaning of Howey can be established by a showing of `horizontal commonality': the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of CT Page 6994 profits. . . . Some circuits hold that a common enterprise can also exist by virtue of "vertical commonality' which focuses on the relationship between the promoter and the body of investors. . . . In an enterprise marked by vertical commonality, the investors' fortunes need not rise and fall together; a pro-rata sharing of profits and losses is not required. Two distinct kinds of vertical commonality have been identified: `broad vertical commonality' and `strict vertical commonality.' To establish `broad vertical commonality," the fortunes of the investors need be linked only to the efforts of the promoter. . . . "Strict vertical commonality' requires that the fortunes of investors be tied to the fortunes of the promoter." (Citations omitted.) Revak v. SEC Realty Corp., supra, 18 F.3d 87-88.
A genuine issue of material fact exists as to whether the plaintiffs invested in a common enterprise. The plaintiffs have provided deposition testimony indicating that their profits were linked solely to the efforts of Fourier. The plaintiffs testified in their depositions that Fourier provided all of the work for the franchises and was in control of the pricing of jobs. (Henriques Deposition, p. 124; Hackett Deposition, p. 73.) Further, the evidence shows that the plaintiffs were not allowed to take in new business and were required to refer all new business to Fournier. (Hackett Deposition, p. 50.) The evidence provided by the parties establishes that genuine issues of material fact exist and thus, the court denies the motion as to count five.
Accordingly, the court denies the defendants' motion for summary judgment as to counts one, four and five because genuine issues of material fact exist.
Hennessey, J.